THE PEOPLE *ex rel.* John B. Kroner *et al.* Defendants in Error, *vs.* WILLIAM K. ABBOTT, Plaintiff in Error.

*Opinion filed June 22, 1916—Rehearing denied October 11, 1916.*

1. CONSTITUTIONAL LAW—*the Police Pension Fund act of 1909 is constitutional.* The Police Pension Fund act of 1909 is not in contravention of sections 19 and 20 of article 4 of the constitution, which forbid the legislature from authorizing extra compensation to a public officer after services rendered and forbid the State from extending credit to or in aid of any individual; nor is it in violation of sections 10 and 11 of article 9 of the constitution, providing that taxes levied upon municipal corporations must be uniform and that the pay of municipal officers shall not be increased or diminished during their terms of office.

2. POLICE PENSIONS—*the act of 1909 does not require twenty years' service after the act took effect.* Section 3 of the Police Pension Fund act of 1909, which makes eligible as pensioners persons who at the time of the taking effect of the act are members of a regularly constituted police force of the city, or who shall thereafter become members of such a police force, who shall have served for the period of twenty years or more, is not limited to persons who serve for a period of twenty years after the act went into effect and become fifty years old after that date, but applies also to all who were members of the police force when the act went into effect, although not to those who ceased to be members of the police force before that time.

3. SAME—*Police Pension Fund act of 1909 is mandatory.* The Police Pension Fund act of 1909, which provides that in cities of certain population "there shall be set apart" moneys to constitute a police pension fund, is mandatory and not merely directory, and the mayor of a city within the terms of the act may be compelled by *mandamus,* at the suit of eligible beneficiaries of the fund, to appoint a board of trustees for such fund.

WRIT OF ERROR to the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

. T. B. PAPE, and J. T. INGHRAM, for plaintiff in error.

GEORGE H. WILSON, and HENRY E. SCHMIEDESKAMP, (HOWARD W. HAYES, of counsel,) for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The relators, John B. Kroner and Joseph Hildebrand, on September 20, 1915, filed a petition in the circuit court of Adams county praying that a peremptory writ of *mandamus* be issued against William K. Abbott, as mayor of the city of Quincy, commanding him to appoint two qualified residents as members of the board of trustees of the police pension fund of said city, in accordance with the provisions of the Police Pension Fund act of 1909. (Laws of 1909, p. 133.) The respondent filed a general demurrer to the petition, which was overruled by the court. Respondent having elected to stand by his demurrer, judgment was entered ordering that a peremptory writ of *mandamus* issue, commanding the respondent to appoint two members of such board. The case has been brought to this court by writ of error.

The petition alleges that the relators are, and have been for over fifty years, tax-payers and residents of the city of Quincy; that each is over seventy years of age; that on July 1, 1909, the date when said act went into effect, they were both members of the regularly constituted police force of said city. and so remained until the year 1911, at which time they retired from said force and have not been mem-

bers since; that at the time of their retirement they had served on such force for thirty-eight and forty-three years, respectively; that for more than one year immediately prior to their retirement each had received a salary of $60 per month, Kroner holding the rank of patrolman and Hildebrand that of station officer. The petition further alleges that said city had a population of not less than 20,000 nor more than 50,000 on July 1, 1909, and since that date, and is within the provisions of said Police Pension Fund act; that Abbott, some three years ago, was duly elected and qualified as mayor of said city and is still so acting; that no police pension fund has been set apart, formed or disbursed in said city and no board of trustees of such fund appointed pursuant to said act; that relators are entitled to have said pension fund set apart and to participate in the benefits thereof as pensioners; that at divers times since March, 1915, they have requested said mayor to appoint two men for said board of trustees and that he refuses to make such appointment.

The act was amended in 1913, making it applicable to all cities between 9000 and 50,000, while the original act only applied to cities between 20,000 and 50,000. The amendment further provided that certain portions of the act should not apply to cities that have not adopted civil service in the police department, but said amendments in no way affect the questions raised in this cause. Section 1 of the act provides that in all cities under it "there shall be set apart the following moneys to constitute a police pension fund." Then follows a specification of ten different ways in which the money for such fund shall be raised, including a fixed per cent of certain licenses granted by the city; a per cent of the fines collected for the violation of city ordinances; the fines imposed upon and rewards granted to the police force, and all money theretofore accumulated in such city for the purpose of establishing a fund for the benefit of disabled or superannuated police-

men.   The eighth item provides that in cities under the
Civil Service law one per cent shall be deducted from
the salary of every member of the police force, not to ex-
ceed one dollar per month.   Section 3 provides, in part, as
follows:  "Whenever any person who, at the time of the
taking effect of this act is a member of a regularly con-
stituted police force of such city, village or town or who
shall thereafter become a member of such a police force,
shall have served for the period of twenty years or more
upon the regularly constituted police force of such city, vil-
lage or town of this State said board shall, subject to the
provisions of this act, order and direct that such person
after becoming fifty years of age and his service on such
police force shall have ceased, shall be paid from such fund
a yearly pension equal to one-half of the amount of salary
attached to the rank which he may have held on such police
force for one year immediately prior to the time of such
retirement," etc.   Section 4 provides for the payment of a
pension to a policeman who has become physically disabled
while in, and in consequence of, the performance of his
duty.   Section 6 provides for the payment of a pension to
the widow, child or children of a policeman who loses his
life in the performance of his duty or receives injuries from
which he thereafter dies, giving in some detail when and
under what circumstances the family shall receive such pen-
sion.   Among other provisions are the following:  "That
whenever any member of the police force of such city, vil-
lage or town shall have retired or shall have been retired
after twenty years' service or on account of being physically
disabled, shall then marry, such wife or child or children
or dependent parent of such policeman, shall after his death,
receive no pension from said fund.   Whenever any mem-
ber of a police force shall die after ten years' service there-
in and while still in the service of such city, village or town,
leaving a widow or child or children under the age of six-
teen years or dependent parent," then certain specified mem-

bers of his family shall receive a pension. Section 13 of the act provides, among other things, that "if at any time there shall not be sufficient moneys belonging to this fund to pay * * * its beneficiaries, then they shall be paid *pro rata* from said funds, but no allowance or order of such board shall be held to create any liability against any such city, village or town, except upon the fund so set apart as aforesaid for the payment thereof."

While the entire act should be read and considered in order to obtain a full understanding of the meaning of its various sections, the provisions above set forth are the chief ones that must be considered in deciding the questions raised in the briefs.

Counsel for plaintiff in error insist that the construction put upon the act by the trial court would render the act unconstitutional, as violative of section 19 of article 4 of the constitution, which forbids the General Assembly to authorize extra compensation to a public officer after service has been rendered or a contract made, and as contrary to section 20 of the same article, which forbids the State to become responsible for the debts or liabilities of, or in any manner to extend credit to or in aid of, any individual, and also as in violation of sections 10 and 11 of article 9, which provide that taxes levied by the General Assembly upon municipal corporations must be uniform, and that the fees and compensation of no municipal officer, elected or appointed, shall be increased or diminished during his term.

A system of pensions to municipal officers and employees injured or disabled while on duty or retiring after a term of service has gradually arisen and is being extended during recent years. The constitutionality of statutes establishing such pension system is sustained upon the ground that "these annuities * * * are in the nature of compensation for services previously rendered for which full and adequate compensation was not received at the time of the rendition of the services. It is, in effect, pay withheld

to induce long-continued and faithful service, and the public benefit accrues in two ways :" by encouraging competent employees to remain in the service, and by retiring from the public service those who have become incapacitated from performing the duties as well as they might be performed by younger or more vigorous men. (1 Dillon on Mun. Corp.—5th ed.—sec. 430.) This court in *Hughes* v. *Traeger,* 264 Ill. 612, upheld the constitutionality of a pension act and approved the doctrine just quoted from Dillon. Such pensions generally are not considered donations or gratuities. The rule in the majority of jurisdictions is, that the legislature has power to require municipalities to pension their employees and raise the funds for that purpose. (5 McQuillin on Mun. Corp. sec. 2422; 1 Dillon on Mun. Corp.—5th ed.—secs. 105, 430; *State* v. *Love,* 34 L. R. A. (N. S.) 607, and note; also 24 Ann. Cas. 542, and note; *Trustees of Firemen's Fund* v. *Roome,* 93 N. Y. 313; *Commonwealth* v. *Walton,* 182 Pa. St. 373.) Some State courts have held such laws unconstitutional, the leading case setting forth this position being *State* v. *Ziegenhein,* 144 Mo. 283, but under the decisions of our own State the pension law here under consideration must be held constitutional. *Firemen's Benevolent Ass'n* v. *Lounsbury,* 21 Ill. 510; *Ryan* v. *Foreman,* 262 id. 175; *Hughes* v. *Traeger, supra.*

Counsel for plaintiff in error further argue that this law should be construed so as to operate prospectively, only, and that if so construed the act will not apply to either of the relators; that the legislature intended this act to apply, under section 3, solely to those who not only served twenty years after July 1, 1909, but also became fifty years of age after that date. It is conceded by all parties that, under the authorities, pension acts, to be valid, can only confer pensions upon persons who at the time of receiving them are officers or employees of the municipality; that pensions cannot be conferred upon persons who previously to the

274 — 25

grant had retired from the service of the city. (1 Dillon on Mun. Corp.—5th ed.—sec. 430; *Mahon* v. *Board of Education,* 171 N..Y. 263; *People* v. *Partridge,* 172 id. 305.) Counsel for defendants in error argue that the act is not retrospective, as it applies only to those in the service at the time or after it was enacted. If this pension act applies to the relators, we think it must be held to be, in a sense, retrospective, as it will·impose upon municipalities duties and responsibilities arising out of past transactions. The rule is, that in construing and applying statutes conferring pensions, as in construing other statutes, they are not to be given retroactive effect in the absence of express language in the statute requiring it. (1 Dillon on· Mun. Corp.—5th ed.—sec. 432; 2 McQuillin on Mun. Corp. sec. 511; *Eddy* v. *Morgan,* 216 Ill. 437.) The reading of the act leads to the conclusion that the legislature did not intend twenty years to elapse before it should be put into effect, for section 4 provides for the payment of a pension at any time to a policeman physically disabled in the performance of his duty, and section 6 provides that if any policeman loses his life in the performance of his duty, at any time after the act is in force, certain members of his family shall be paid a pension under the conditions there stated. There is also another provision of the same section which provides for the payment of a pension to certain members of his family if the policeman dies after he has been in service ten years. Should the wording of section 3 be construed as contended for by counsel for plaintiff in error?

"One of the most effective means to ascertain the legislative intent in the adoption of a new statute is to consider it in reference to the state of the law before its adoption, and particularly with reference to previous legislation upon the same subject." (*People* v. *Highway Comrs.* 270 Ill. 141; *Wright* v. *People,* 101 id. 126.) Similar pension laws for the benefit of policemen and firemen, enacted in

this State before the enactment of this law, resemble in wording, on this point, the one here under consideration, and this court has assumed that such laws were intended to operate retrospectively to the same extent that this law is retrospective if construed according to the judgment of the trial court. (*Ryan* v. *Foreman, supra.*)   In the pension act held constitutional in *Hughes* v. *Traeger, supra,* the pension funds were raised and accumulated almost entirely from the salaries of the beneficiaries, and that act therefore very reasonably required all receiving the same pension to pay in a proportionate amount of salary.   A very small proportion, as we have seen, of the pension funds under this act is obtained from the salaries of the beneficiaries.   It is hardly to be assumed that the legislature intended that the funds must accumulate for twenty years before any employee could be retired and receive the benefit of the act. The wording of the provisions of section 3 under consideration shows clearly that it was intended to apply to those in the service when the act went into effect as well as those who thereafter became members of the police force.   One might naturally conclude, from the reading of section 3 alone, that it was the intention of the legislature to have the act retroactive as to previous service of all who were members of the police force in cities between 20,000 and 50,000 at the time the act went into effect, and, reading this section in connection with all the other provisions of the act, we think the language of the statute requires such construction.   There is nothing in the words of section 3, "after becoming fifty years of age," that is not in harmony with this conclusion.

Counsel for plaintiff in error argue that such a construction will result in permitting a policeman who has served, for instance, nineteen years and eleven months before the act goes into effect, and only one month thereafter, to receive the benefit of it, while one who has gone out of the service a few days, even, before the act goes into effect

can receive no benefit from it, and that such construction is most unreasonable. They base this argument largely upon the reasoning in *State* v. *Ziegenhein, supra,* but in that case the entire act was held unconstitutional and its wording was different from that of this act. An act similar to the one here under consideration was held constitutional in *State* v. *Love, supra,* after a review of all the authorities; and this is in accord with our own decisions on this question heretofore cited and with the great weight of authority. In discussing the question of bounties or pensions Cooley says: "But the primary object in all such bounties is not the private but the public interest. To show gratitude for meritorious public services in the army and navy by liberal provision for those who have performed them is not only proper in itself, but it may reasonably be expected to have a powerful influence in inciting others to self-denying, faithful and courageous services in the future, when the government, which is so ready to be generous as well as just, shall have need of their assistance. The same may be said of a like recognition of valuable public services rendered by other persons. The question in every case is not one of power, but of prudence and public policy." (1 Cooley on Taxation,—3d ed.—189.) In a note the author cites as upholding this doctrine, *Firemen's Benevolent Ass'n* v. *Lownsbury, supra.*

Counsel for plaintiff in error also argue that this law is not mandatory upon municipalities, but merely directory or permissive. The first section of the act, as we have seen, provides that "there shall be set apart" moneys to constitute a police pension fund. Under the first and ordinary meaning of the word "shall" the act should be construed as mandatory, and considered in the light of what we have heretofore said in this opinion as to when it was intended the act should go into effect it must be held mandatory.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*