THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF ROCKFORD *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF ROCKFORD *et al.*, Defendants-Appellees.

Second District    No. 80-743

Opinion filed May 6, 1981.

Elmer C. Rudy, of Williams, McCarthy, Kinley, Rudy & Picha, of Rockford, for appellants.

A. Curtis Washburn, Legal Director of City of Rockford, of Rockford (Kathleen Elliott, of counsel), for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The Board of Trustees of the Police Pension Fund of Rockford, Illinois (hereafter Police Board), and the Board of Trustees of the Firemen's Pension Fund of Rockford, Illinois (hereafter Firemen's Board), appeal from the order of the circuit court of Winnebago County dismissing their petition for a writ of *mandamus*.

The writ of *mandamus* was sought by the Police Board and the Firemen's Board to compel the City of Rockford (hereafter City) to levy a tax in conformity with their interpretation of certain provisions of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 1—101 *et seq.*). In May of 1980, the Police Board reported to the city council and responsible city officials that, based on actuarial computations of the Illinois Department of Insurance, the sum of $1,895,180 must be levied by the city council to meet the obligations of the police pension fund, including

reserve requirements as determined by the Illinois Pension Code. The city council, however, levied only $1,115,987 for the police pension fund for 1980 and refused to amend the tax levy to the amount of $1,895,180 sought by the Police Board. The Firemen's Board in May of 1980 reported to the City that the sum of $2,184,235 must be levied by the city council to pay all pensions and obligations of the fund and meet statutorily designated requirements for reserves. The city council, however, passed a tax levy of only $1,574,920 and likewise refused to amend this tax levy in accordance with the report of the Firemen's Board.

The Police Board and the Firemen's Board contend that the city council is required by the language of the financing sections of the Act (section 3—125 for police pensions and section 4—118 for firemen's pensions) and the reserve sections (section 3—127 for the police fund and section 4—120 for the firemen's fund) of the Act, to levy a tax in the amounts determined by the trustees of the respective funds.

Section 3—125 of the Act reads in part as follows:

"Financing. The city council or the board of trustees of the municipality, as the case may be, shall annually levy a tax upon all the taxable property of the municipality at the rate on the dollar which will produce an amount which, when added to the deductions from the salaries or wages of policemen, and receipts available from all other sources as hereinafter referred to, will equal a sum sufficient to meet the annual requirements of the police pension fund. The annual requirements to be provided by such tax levy shall be equal to the reserve prescribed by Section 3—127. The tax shall be levied and collected in like manner with general taxes of the municipality, and shall be in addition to all other taxes now or hereafter authorized to be levied upon all property within such municipality, and shall be in addition to the amount authorized to be levied for general purposes as provided by Section 8—3—1 of the Illinois Municipal Code, approved May 29, 1961, as amended."

Section 3—127 provides as follows for police fund reserve:

"Reserve. The Board shall establish and maintain a reserve to insure the payment of all obligations incurred under this Article. The reserve shall be not less than $10,000 for each policeman and each beneficiary in each of the municipalities subject to this Article; provided, that the reserve to be accumulated shall not exceed the estimated total actuarial requirements of the fund.

For the purposes of this section the several children of a policeman shall be considered as a single beneficiary.

In a municipality having a reserve less than the actuarial requirements of the fund, the Board, in making its annual report to the city

council or board of trustees of the municipality, shall designate the proportionate amount needed annually to insure the accumulation of such actuarial reserve over a period of 40 years subsequent to January 1, 1980, in the case of pension funds in operation on that date, or subsequent to the date of establishment in the case of a fund created thereafter, to the end that an actuarial reserve will be attained in such a period."

The corresponding sections treating with firemen's pensions are not identical to the above. Section 4—118 of the Act reads in part as follows:

"Financing. The city council or the Board of Trustees, as the case may be, of the municipality shall annually levy a tax upon all the taxable property of the municipality at the rate on the dollar which will produce an amount which, when added to the deductions from the salaries or wages of firemen and receipts available from all other sources as hereinafter referred to, will equal a sum sufficient to (1) meet the annual requirements of the pension fund; and (2) provide actuarial reserves for the annuities and benefits to be earned by the firemen during the year, and said actuarial reserve requirements shall be computed at a rate of not less than 17.5% of the salaries and wages to be paid to the firemen for the ensuing year; and (3) provide for the amortization of the unfunded accrued liabilities, including liabilities on account of pensions and benefits in force on January 1, 1980, or which come into force at a later date in the case of funds created after said date, over a period of 40 years subsequent to January 1, 1980.

The tax shall be levied and collected in like manner with the general taxes of the municipality, and shall be in addition to all other taxes now or hereafter authorized to be levied upon all property within the municipality, and in addition to the amount authorized to be levied for general purposes, as provided by Section 8—3—1 of the Illinois Municipal Code, approved May 29, 1961, as amended, or as provided by Section 14 of 'An Act to create Fire Protection Districts', approved July 8, 1927, as amended."

Section 4—120 of the Act provides as follows:

"Reserve. The Board shall establish and maintain a reserve to insure the payment of all obligations incurred under this Article. The reserve shall be not less than $1,000 for each 1,000 inhabitants for each municipality subject to this Article; provided, that the minimum reserve shall be not less than the amount remaining in the pension fund in the municipality as a reserve on January 1, 1948, after payment of all current liabilities for the year 1947.

In a municipality having a reserve less than the minimum reserve specified above, the Board of the pension fund in making its

annual report to the city council or Board of Trustees of the municipality, shall designate the proportionate amount needed annually to insure the accumulation of such minimum reserve over a period of 10 years subsequent to January 1, 1961.

None of the funds collected under the 'Firemen's Pension Act of 1919' or this Article, subsequent to January 1, 1947, shall be liable or used for the payment in whole or in any part of any pension payments or any other debts or obligations which became due or payable prior to that date."

Attached to the petition for the writ of *mandamus* are figures prepared by the actuary for the Illinois Department of Insurance supporting the amounts requested by the Police Board and Firemen's Board as the amounts to be levied by the city council for those funds, that is $1,895,180 for the police fund and $2,184,235 for the firemen's fund, as opposed to the amounts actually levied by the city council as above noted, that is $1,115,987 and $1,574,920 respectively.

Counsel for the Police Board and the Firemen's Board have assured us at oral argument that the sums levied by the City do in fact meet the minimum requirements for the reserve required by sections 3—127 and 4—120 of the Act.

The Police Board and the Firemen's Board, in contending that the language of the above-quoted section is mandatory, argue that the statutory scheme of requiring actuarial reserves to be developed and maintained and requiring the pension fund boards to certify and report annually to the city council (sections 3—143 and 4—134 of the Act), the amounts requested to pay the pensions and maintain the reserve funds and in giving the pension boards the control and management of the pension funds as provided by sections 3—132 and 4—123 of the Act, makes it mandatory for the pension boards to develop and report the required figures for pension payments and reserves to the city council and likewise makes it mandatory for the city council to levy the amount of taxes developed and certified by the boards of trustees as presented in conformity to the statute. The trustees say that it is hard to see why the State legislature set up the comprehensive scheme indicated by the various sections of the Illinois Pension Code quoted above in determining the needs of the pension funds on an objective basis if the legislature intended these sections to be only advisory to the city council, leaving the final decision to be determined in the budget process of the council. The trustees maintain that it is more reasonable to believe that the legislature intended that the pension boards be charged with the duty of determining the financial needs of the pension funds on a purely actuarial basis rather than having the financing needs of these funds determined by the city council's view of what is feasible or appropriate at the time the tax levy is

made. The trustees point to the use of the mandatory word "shall" in both the financing and reserve sections of the Act, and cite *People ex rel. Kroner v. Abbott* (1916), 274 Ill. 380, and *People ex rel. Sweet v. Central Illinois Public Service Co.* (1971), 48 Ill. 2d 145, as supporting their position. The *Abbott* case construed the language of the Pension Act of 1909 as being mandatory in requiring a pension fund to be set up and trustees thereof appointed by the city of Quincy, treating the word "shall" in the Act as being mandatory in intent. In that case the city had failed to comply with the requirement of setting up the pension fund to begin with, which is clearly a mandatory preliminary act, otherwise the statute could not be implemented at all. That was obviously a different situation than the one before us. In *Sweet*, the city council originally had a maximum rate for its police pension fund of .0146. Subsequently, without repealing the original ordinance and without a referendum, the city council extended a rate of .0915 for the police pension fund. This was objected to on the ground that having set a rate of .0146 this rate could not be increased by the city without a referendum. (Ill. Rev. Stat. 1979, ch. 120, pars. 643a, 643b.) The court, however, rejected this argument and overruled the objection, saying:

> "However, the applicable statute requiring the levy of a tax for police pension funds purposes is mandatory, allows no discretion, and requires the city to levy a tax at a rate which will produce a sum sufficient to satisfy the annual requirements of the police pension fund." 48 Ill. 2d 145, 156-57.

While this language indicates that section 3—125 of the Act (the present Act) is mandatory in using the word "shall," it should be noted that in the *Sweet* case an objection had been made by a taxpayer questioning the authority of the city to make the levy in question. The court held that under the language of section 3—125 of the Act the city clearly had the authority to do so and could act outside the Revenue Act. In the case before us, however, the City, which has the authority to pass a levy conformable to the requirements of sections 3—125 and 3—127 of the Illinois Pension Code, simply refused to defer to the judgment of the pension board as to the *amount* required to be levied and levied a lesser sum than the pension board found to be necessary. The present case, therefore, poses a different question than did the *Abbott* and *Sweet* cases. Here there is only a difference of opinion as to what amount is required to implement the statute and the question is whether the city council has any discretion in making that determination or must levy the amount requested by the pension boards.

While sections 3—125 and 3—127 and sections 4—118 and 4—120 of the Act are couched in mandatory language in that the word "shall" is used, we find no specific reference to the actuarial findings of the Illinois

Department of Insurance indicating that its calculations are binding on the city council. Since the tax levy requested by the pension boards is derived from the actuarial findings of the Illinois Department of Insurance, the question at issue is whether the city council has any discretion to depart from these findings in enacting the tax levy for the police and firemen's pension funds. The trustees contend that the City has no discretion but must pass a tax levy conforming to the findings of the Police Board and the Firemen's Board. Indeed, *mandamus* is not an available remedy otherwise, for the writ cannot be invoked to require the doing of an act which is discretionary in character. *People ex rel. McGrady v. Carmody* (1968), 104 Ill. App. 2d 137, 139.

Recognizing the salutary purposes of the Illinois Pension Code and specifically the statutes referred to here in safeguarding the integrity of the police and firemen's pension funds, we nevertheless stop short of withdrawing all discretion from the city council as to the amount of its tax levy for these purposes.

The City cites, in support of its contention that it has discretion to pass a lesser tax levy than that determined by the pension boards, the case of *People ex rel. Illinois Federation of Teachers, AFT, AFL-CIO v. Lindberg* (1975), 60 Ill. 2d 266; also *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833. In the *Lindberg* case, certain teachers and the Illinois Federation of Teachers sought a writ of *mandamus* against the State Comptroller and the State Treasurer to compel certain amounts to be paid into the teachers' pension funds following a reduction in such funds, by the governor's veto of amounts awarded by the Court of Claims and appropriated by the legislature. The teachers contended that they had a contractual relationship with the State by virtue of article XIII, section 5 of the Illinois Constitution of 1970, which provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." In its opinion, the court refers to the debates at the Constitutional Convention and cites the remarks of Delegate Kinney, a cosponsor of the pension provisions of the 1970 Constitution[1]:

> " 'It was not intended to require 100 per cent funding or 50 per cent or 30 per cent funding or get into any of those problems, aside from the very slim area where a court might judicially determine that imminent bankruptcy would really be impairment.' "[2] (60 Ill. 2d 266, 271.)

While the circumstances of the *Illinois Federation of Teachers'* case were entirely different from those of the case before us, the remarks of

---

[1] Section 5, article XIII of the 1970 Illinois Constitution.

[2] 4 Record of Proceedings, Sixth Illinois Constitutional Convention 2929.

Delegate Kinney were pointed to by the supreme court in its opinion holding that the compulsory participants in the pension plans in question did not have a contractual right under the Illinois Pension Code and that the governor could properly use his veto power to reduce the pension appropriation bills.

*Kraus*, also cited by the City, is not significant in the context of the case we consider here since it did not involve the same point and only reiterated the language of the *Illinois Federation of Teachers'* case to the effect that section 5 of article XIII of the Illinois Constitution of 1970 was not intended to require any specific level of pension funding.

While the finance and reserve sections of the Illinois Pension Code (sections 3—125 and 3—127 for police pensions and 4—118 and 4—120 for firemen's pensions) are clearly designed to insure the financial integrity of these pension funds, we do not believe it was their purpose to remove all discretion from the city council in determining the dollar amount to be levied for these funds in any particular year and to require the city council to accept the Police Board and the Firemen's Board reports as mandatory in that regard. Since we do not interpret the statutes in question in this rigid manner, the enactment of the pension tax levies by the Rockford City Council was not a mere ministerial act subject to the writ of *mandamus*.

We therefore affirm the judgment of the circuit court of Winnebago County in dismissing the petition for the issuance of such a writ.

Judgment affirmed.

HOPF, J., concurs.

Mr. JUSTICE LINDBERG, specially concurring:
While I concur in my colleagues' well-reasoned opinion, I conclude that the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 1—101 *et seq.*) explicitly commands this result. I find the language of section 3—127 (Ill. Rev. Stat. 1979, ch. 108½, par. 3—127) that "[t]he reserve shall not be *less* than $10,000 for each policeman and each beneficiary in each of the municipalities subject to this Article; provided that the reserve to be accumulated shall not *exceed* the estimated total actuarial requirements of the fund" (emphasis added), and a similar provision in regard to firemen's pensions (Ill. Rev. Stat. 1979, ch. 108½, par. 4—118), to be dispositive of the issues in this case. While those statutes say "[t]he city council * * * *shall* annually levy a tax * * *" (emphasis added), this language falls far short of precluding the exercise of the discretion mandated by the statutes in their next paragraphs which establish the levels of the respective reserves in the language quoted above.

A levy of an amount that will assure a reserve sufficient to provide $10,000 to each policeman or fireman and their beneficiaries is the minimum which the levy must provide. On the other hand, the levy shall not be in an amount that would cause the respective reserves to exceed the total actuarial requirements of the reserves. The city council may levy any amount which falls between those parameters.