CRAIG KARFS, Plaintiff-Appellee, v. THE CITY OF BELLEVILLE, Defendant-Appellant (The Board of Trustees of the Firefighters' Pension Fund of the City of Belleville, Defendant).

Fifth District   No. 5—00—0643

Opinion filed May 23, 2002.

Robert J. Sprague, of Sprague & Urban, of Belleville, for appellant.

Jack Carey, of Belleville, for appellee.

PRESIDING JUSTICE MAAG delivered the opinion of the court:

The defendant, the City of Belleville (the City), appeals from an order of the St. Clair County circuit court finding that the City was bound by the finality of the decision made by the codefendant, the Board of Trustees of the Firefighters' Pension Fund of the City of Belleville (Board), to award a monthly disability benefit of $2,481.02 to Craig Karfs (plaintiff). On appeal, the City claims that the trial court erred in determining that the City was bound by the Board's award. The City claims that because it was not a proper party to the proceeding before the administrative agency, it could not have sought administrative review of that decision and, therefore, it was not bound by the 35-day limitation period for seeking a review of administrative decisions.

The pertinent facts are not in dispute. Plaintiff was employed as a firefighter for the City from November 1, 1973, until November 26, 1996. On November 27, 1996, plaintiff retired. He applied for a duty-related disability pension. In his application, plaintiff requested that five weeks of his unused vacation pay and 1,000 hours of unused sick pay be added to his base salary for the purpose of calculating his pension. At the time of plaintiff's pension application, there was in effect a labor contract between the City and the firefighters' union that permitted a retiring firefighter with sufficient service time to request that unused vacation and sick pay be added to his base salary for pension purposes.

Michael J. Lundy, the treasurer of the Board and the treasurer of the City, calculated plaintiff's pension. He included plaintiff's unused vacation and sick pay in calculating the total base salary. According to Lundy's calculation, plaintiff was entitled to receive a monthly pension of $2,481.02. Lundy's pension computations were recorded on the letterhead stationery of the treasurer of the City. In December 1996, the Board met and voted to award plaintiff a duty-related disability pension of $2,481.02 per month. The minutes of that meeting are not a part of this record. However, members of the Board did sign the bottom of the letterhead stationery containing Lundy's computations. The Board's decision was not appealed.

In a letter dated June 30, 1997, Lundy notified plaintiff that errors were made when his pension was originally calculated. The letter was written on letterhead of the treasurer of the City and was signed "Michael J. Lundy, City Treasurer." Lundy indicated that the unused

vacation and sick pay should not have been added to plaintiff's base salary for the purpose of calculating his total base pay. Lundy stated that the City should have paid plaintiff a lump sum of $4,900.30 as compensation for his unused sick hours and vacation hours. Lundy wrote that plaintiff should have received $2,215.59 per month in pension benefits and that his monthly pension would be reduced to that sum beginning in July 1997. Lundy advised plaintiff that he would be required to reimburse the pension fund a total of $1,858.01, a sum that represented monthly overpayments to plaintiff since December 1996. Plaintiff contacted the Board's attorneys after receiving the letter. On July 3, 1997, Jim Mendillo, an attorney who represented the Board, wrote to "Michael Lundy, City Treasurer," and questioned the claim of error, referencing specific provisions (sections 14.6 and 15.5) of the labor contract. There is no document or record suggesting that any action was taken by the City or the Board regarding plaintiff's pension following the July 3, 1997, letter of inquiry. Plaintiff continued to receive $2,481.02 per month in pension benefits.

On December 8, 1999, plaintiff received a letter from Michael P. Murphy, an attorney of the law firm representing the Board. In the letter, Murphy stated that the Board had voted in May 1997 to reduce the amount of plaintiff's pension, due to an error in the calculation of the total base pay. However, other than the statement in this letter, there is no indication that the Board took any action to alter plaintiff's pension at any time prior to 1999. In the letter, Murphy advised plaintiff that the error would be "corrected" and that, once corrected, plaintiff would receive $2,215.59 in monthly pension benefits. He also indicated that plaintiff had received overpayments of more than $6,000. Murphy asked plaintiff to appear at the December 1999 meeting of the Board to establish a repayment plan.

According to the minutes of the January 25, 2000, meeting, the Board adopted its attorney's recalculation of plaintiff's pension and voted to reduce the pension to $2,215.59 per month. The Board also discussed the repayment of the overpayments made to plaintiff, but there is no indication that a vote was taken on that issue. Beginning in February 2000, plaintiff's monthly pension was reduced to $2,215.59.

On February 18, 2000, plaintiff filed suit against the Board and the City. Count I of the first amended complaint was directed against the Board. In count I, plaintiff sought an order prohibiting the Board from recalculating or attempting to recalculate his original pension award and prohibiting the Board from paying a lesser sum than that which was initially awarded. Count II was filed against the City and the Board. In count II, plaintiff asked the court to enter a judgment

declaring that the City and the Board were prohibited from recalculating his pension benefit and from paying a reduced sum, on the ground that neither the Board nor the City sought a review of the Board's decision within 35 days after the decision was issued. Plaintiff also asked the court to declare that the City and the Board are responsible to pay plaintiff a sum representing the difference between the reduced benefit and the original benefit for each month the reduced benefit was paid, statutory interest on that sum, and court costs.

In a written judgment, the circuit court pointed out that the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)) was the exclusive means of reviewing decisions of the Board, according to section 4—139 of the Illinois Pension Code (40 ILCS 5/4—139 (West 1994)). The court found that the Board had no jurisdiction to reduce plaintiff's pension award, because it did not seek a review of the decision within the 35-day limitation period provided in section 3—103 of the Administrative Review Law (735 ILCS 5/3—103 (West 1994)). The court also found that the City was bound by the original pension decision, because it had not sought a review of that decision within the 35-day limitation period in the Administrative Review Law (735 ILCS 5/3—103 (West 1994)). The court entered an order prohibiting the Board and the City from reducing plaintiff's initial pension award. The court also declared the Board and the City liable to pay plaintiff a sum representing the difference between the reduced benefit and the original benefit, a sum of $265.43 per month, for each month the reduced benefit was paid, statutory interest on that amount, and plaintiff's court costs. The Board did not appeal.

■ The firefighters' pension fund is a statutory creation and is governed by the provisions of the Illinois Pension Code (Code) (40 ILCS 5/4—101 *et seq.* (West 1994)). The Code provides that a board of trustees of the firefighters' pension fund shall be created in each municipality. 40 ILCS 5/4—121 (West 1994). In cities, the board of trustees is to be made up of the city treasurer, the city clerk, the fire marshal, and the comptroller or mayor, as well as three active firefighters and one retired firefighter. 40 ILCS 5/4—121 (West 1994). Section 4—130 of the Code directs that the city treasurer shall be the treasurer of the board and the custodian of the pension fund and shall secure and safely keep the fund's assets, subject to the direction and control of the board. 40 ILCS 5/4—130 (West 1994). Section 4—130 also provides that the treasurer shall keep the books and accounts concerning the fund in such a manner as prescribed by the board and shall make those books available for inspection by the board. 40 ILCS 5/4—130 (West 1994).

■ The board of trustees of the firefighters' pension fund has sev-

eral duties, including the duty to control and manage the pension fund and all the money donated, paid, assessed, or provided by law for the pensioning of disabled and retired firefighters and their dependents (40 ILCS 5/4—123 (West 1994)), the duty to assess the contributions each firefighter is required to make and to ensure that the contributions are placed by the city treasurer, as *ex officio* treasurer of the pension board, to the credit of the pension fund (40 ILCS 5/4—124 (West 1994)), the duty to hear and determine applications for pensions and to order and direct the payment of pensions and other benefits (40 ILCS 5/4—125 (West 1994)), and the duty to keep a record of all of its meetings and proceedings (40 ILCS 5/4—129 (West 1994)). The pension board is also charged with the duty to establish and maintain a reserve, equal to the estimated total actuarial requirements of the fund, to ensure the payment of all obligations incurred (40 ILCS 5/4—120 (West 1994)).

■ The city council also has obligations under the Code. Section 4—101 of the Code imposes upon the city council in each municipality a duty to establish and administer a firefighters' pension fund. 40 ILCS 5/4—101 (West 1994). The city council is directed to levy a tax upon the taxable property of the municipality at a rate which will produce an amount that, when added to the firefighters' contributions and other revenues, will equal a sum sufficient to meet the annual actuarial requirements of the pension fund. 40 ILCS 5/4—118(a) (West 1994). The annual actuarial requirements include the normal costs of the pension fund and an amount to amortize the fund's unfunded accrued liabilities. 40 ILCS 5/4—118(a) (West 1994). The annual actuarial requirements of the pension fund can be calculated by an actuary employed by the Illinois Department of Insurance or retained by the pension board or the municipality. 40 ILCS 5/4—118(a) (West 1994). Prior to the meeting in which decisions are made in regard to the tax levy, the pension board is required to report to the city council on the condition of the pension fund and to certify the assets in its custody, the estimated receipts for the coming year based upon calculations of the contributions of firefighters and other sources, and the estimated amount necessary to meet the annual actuarial requirements of the pension fund. 40 ILCS 5/4—134 (West 1994).

■ Section 4—139 of the Code specifically provides that all final administrative decisions of the pension boards are governed by provisions of the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). 40 ILCS 5/4—139 (West 1994). An administrative decision is any decision, order, or determination of any administrative agency rendered in a particular case that affects the legal rights, duties, or privileges of the parties and that terminates the proceedings

before the administrative agency. 735 ILCS 5/3—101 (West 1994). Every action to review a final administrative decision must be commenced by the filing of a complaint and the issuance of a summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision. 735 ILCS 5/3—103 (West 1994).

The City claims that it was not a party to the administrative proceeding and therefore could not have sought administrative review of the Board's decision. The City therefore concludes that it is not bound by the Board's determination and may challenge outside the review period the pension benefit awarded to plaintiff.

Only those parties to an administrative proceeding whose rights, privileges, or duties are affected by the decision of the administrative agency may seek the review of its decision. *Peterson v. Board of Trustees of Firemen's Pension Fund*, 5 Ill. App. 3d 180, 183, 281 N.E.2d 368, 370 (1971), *aff'd on other grounds*, 54 Ill. 2d 260, 296 N.E.2d 721 (1973). Under the Code, the City is charged with the obligation to administer the firefighters' pension fund (40 ILCS 5/4—101 (West 1994)) and is required to levy a tax sufficient to meet the annual actuarial requirements of the pension fund (40 ILCS 5/4—118(a) (West 1994)). The City has some discretion in determining the dollar amount to be levied in order to ensure a sufficient reserve. See *Board of Trustees of Police Pension Fund v. City of Rockford*, 96 Ill. App. 3d 102, 107-08, 420 N.E.2d 1126, 1130-31 (1981). Thus, the City has some interest in certain decisions of the pension board in the context of its duty to levy sufficient taxes for the benefit of all firefighters. See *Peterson*, 5 Ill. App. 3d at 183, 281 N.E.2d at 370.

If, for example, in deciding a firefighter's pension benefit, the pension board uses or approves a method of calculation that is prohibited by the Code or violates the labor contract, that decision may be deemed to have a direct impact on a municipality's duty to levy taxes in sufficient proportions to enable the pension system to function, because it is reasonably likely that the pension board would continue to use an improper method to calculate other pensions, resulting in a depletion of the fund. Under those facts, the municipality could seek a review of the agency's decision because the decision potentially impacts the municipality's duty to provide a sufficient sum to meet the requirements of the pension fund. We caution that the pension board's decision must impact a duty or interest of the municipality. A municipality will not have an interest in and standing to seek the review of each individual case that comes before the pension board. Furthermore, a municipality has no authority to review or modify adjudicative decisions made by an administrative agency. See *Board of Trustees of Po-*

*lice Pension Fund v. Washburn*, 153 Ill. App. 3d 482, 486-87, 505 N.E.2d 1209, 1212-13 (1987).

■ In this case, the City has alleged that the Board's original calculation of total base pay was illegal and would result in a diminution of the pension fund because each eligible firefighter was permitted to increase his total base pay by including unused sick and vacation pay, without making any additional individual contribution to the pension fund. Based upon the allegations, the Board's decision to award pensions based upon an illegal method of calculation could have an adverse impact on the City's duty to levy sufficient taxes to enable the pension system to function. Under these circumstances, the City could have sought a review of that decision within the 35-day period permitted in the Administrative Review Law (735 ILCS 5/3—103 (West 1994)). It did not do so. The City has not claimed that it was unaware of the Board's decision.

Where a statute provides that the administrative decisions of an agency are subject to the Administrative Review Law, that statute is the exclusive method for the review of an administrative agency's final decision. Section 4—139 of the Code expressly adopts the Administrative Review Law. 40 ILCS 5/4—139 (West 1994). In this case, the City failed to seek review within 35 days of the Board's decision and could not seek a modification of the award thereafter, because the statutory review period had expired.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPKINS and GOLDENHERSH, JJ., concur.