THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Plaintiff-Appellant and Intervening Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOLS TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, Defendant-Appellee and Intervening Defendant-Appellee (Retired Teachers Association of Chicago, Intervening Plaintiff-Appellee).

First District (4th Division) No. 1—08—1517

Opinion filed August 20, 2009.—Rehearing denied November 16, 2009.

Patrick J. Rocks, of Chicago (Lee Ann Lowder and William A. Morgan, of counsel), for appellant.

Kirkland & Ellis, LLP, of Chicago (Helen E. Witt and Sarah J. Donnell, of counsel), for appellee Board of Trustees of Public Schools Teachers' Pension and Retirement Fund.

Kralovec Meenan LLP (Michael J. Kralovec and Sara R. McClain, of counsel), and Hartigan & O'Connor (Russell W. Hartigan and Patrick H. O'Connor, of counsel), both of Chicago, for appellee Retired Teachers Association of Chicago.

JUSTICE STEELE delivered the opinion of the court:

Plaintiff, the Board of Education of the City of Chicago (Board), appeals orders of the circuit court of Cook County dismissing the Board's complaint against the defendant, Board of Trustees of the Public Schools Teachers' Pension and Retirement Fund of Chicago (Trustees), on the motion of intervenor Retired Teachers Association of Chicago (Retired Teachers), and denying the Board's request to file an amended complaint. For the following reasons, we reverse the order of the circuit court and remand the case for further proceedings.

## BACKGROUND

On January 24, 2005, the Board filed a complaint against the Trustees. The Board alleged that from July 1999 to July 2004, the Trustees paid pensions to certain newly retired teachers on a basis not authorized by the Illinois Pension Code (Pension Code) (40 ILCS 5/1—101 et seq. (West 2006)), resulting in overpayments from the Public Schools Teachers' Pension and Retirement Fund of Chicago (Fund) to the affected retirees. The Board alleged that the Pension Code requires the Board to make up shortfalls when the Fund's assets drop below 90% of its total actuarial liabilities. See 40 ILCS 5/17—129 (West 2006).

Count I of the complaint sought a declaration that the Trustees had violated the Pension Code by using an unauthorized method of calculating average salaries for teachers receiving 22 paychecks per year, as opposed to those receiving 26 paychecks per year. Count II sought an accounting. Count III sought an injunction ordering the Trustees to discontinue and remedy past overpayments.

On October 12, 2006, the Board filed a motion for summary judgment on counts I and II of its complaint. On June 15, 2007, following briefing and a hearing, the circuit court granted the Board's motion, ruling that the Trustees had overpaid teachers receiving 22 paychecks per year, in violation of the Pension Code. The case was set for further proceedings regarding an accounting and remedy.

On July 18, 2007, the Retired Teachers sought leave to intervene in the case, which the trial court granted on July 31, 2007. The Retired Teachers filed a complaint for declaratory relief on September 4, 2007. The Retired Teachers filed a supporting brief, arguing in part that the Board was barred from seeking relief for failure to seek timely administrative review of the pension awards at issue.

On December 20, 2007, following briefing and oral argument from the parties, the circuit court entered an order treating the Retired Teachers' brief as a motion to dismiss and dismissing the Board's complaint. The order also set the case for status on the Board's motion for leave to file a second amended complaint. On May 9, 2008, the circuit court denied the Board leave to file a second amended complaint, ruling that no new facts or law was presented that would remedy the defect in the dismissed complaint. On June 6, 2008, the Board filed a timely notice of appeal to this court.

## DISCUSSION

### I

We begin with the standard of review. The trial court treated the Retired Teachers' brief as a motion to dismiss, based on the argument that the Board failed to seek timely administrative review. Such a motion would fall under sections 2—619(a)(5), 3—102 and 3—103 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(5), 3—102, 3—103 (West 2006)), as well as section 17—158 of the Pension Code (40 ILCS 5/17—158 (West 2006)). Section 17—158 of the Pension Code provides as follows:

> "The provisions of the Administrative Review Law, and all amendments and modifications thereof and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Board provided for under this Article. The term 'administrative decision' is as defined in Section 3—101 of the Code of Civil Procedure." 40 ILCS 5/17—158 (West 2006).

Section 3—101 of the Code, as part of the Administrative Review Law (see 735 ILCS 5/3—102 (West 2006)), provides in part as follows:

> " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency. *** The term 'administrative decision' or 'decision' does not mean or include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding, nor does it mean or include regulations concerning the internal management of the agency not affecting private rights or interests." 735 ILCS 5/3—101 (West 2006).

Section 3—102 of the Code provides in part as follows:

"Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." 735 ILCS 5/3—102 (West 2006).

Section 3—103 of the Code provides in part as follows:

"Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***.

* * *

The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected by the decision at his or her last known residence or place of business." 735 ILCS 5/3—103 (West 2006).

A motion to dismiss pursuant to section 2—619 of the Code admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006). Section 2—619(a)(5) of the Code provides for dismissing a complaint on the ground "[t]hat the action was not commenced within the time limited by law." 735 ILCS 5/2—619(a)(5) (West 2006). "Section 2—619 motions present a question of law, and we review rulings thereon *de novo*." *DeLuna*, 223 Ill. 2d at 59, 857 N.E.2d at 236.

## II

■ On appeal, the Board first argues that the Trustees' decision to award higher pensions to retired teachers receiving 22 paychecks per year—as opposed to those receiving 26 paychecks per year—violated the Pension Code, and thus could be challenged at any time as void. A decision rendered by an administrative agency which lacks jurisdiction over the parties or the subject matter, or which lacks the inherent power to make or enter the decision involved, is void and may be attacked at any time or in any court, either directly or collaterally. See *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112-13, 357 N.E.2d 1154, 1155 (1976). As the Illinois Supreme Court has stated:

"An administrative agency is different from a court because an agency only has the authorization given to it by the legislature

through the statutes. Consequently, to the extent an agency acts outside its statutory authority, it acts without jurisdiction. [Citation.] 'The term "jurisdiction," while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act ***.' [Citation.] Thus, in administrative law, the term 'jurisdiction' has three aspects: (1) personal jurisdiction—the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction—the agency's power 'to hear and determine cases of the general class of cases to which the particular case belongs' [citation], and (3) an agency's scope of authority under the statutes. ***
***

We acknowledge that, theoretically, anytime an agency makes an erroneous decision, it acts without statutory authority because the legislature and the statutes do not give an agency the power to make erroneous decisions. [Citation.] We are confident, however, that a reviewing court can make the appropriate distinction between an erroneous decision and one which lacks statutory authority." *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243-45, 555 N.E.2d 693, 716-17 (1989).

Thus, an agency decision that is merely voidable, as opposed to void, is not subject to collateral attack. See *Newkirk v. Bigard*, 109 Ill. 2d 28, 38, 485 N.E.2d 321, 325 (1985) (and cases discussed therein).

In this case, the Board does not contest the Trustees' subject-matter or personal jurisdiction, but argues that the decision to calculate the pensions as the agency did exceeded the scope of its authority. Aside from cases stating the general law outlined above, the Board relies primarily on *Billik v. Village of Brookfield*, 80 Ill. App. 3d 907, 400 N.E.2d 702 (1980). However, in *Billik*, this court merely held that a village had no authority to supplement or change the statutory requirements of the Illinois Municipal Retirement Fund to make someone eligible who was otherwise ineligible. *Billik*, 80 Ill. App. 3d at 909, 400 N.E.2d at 704. The case did not involve the scope of an agency's statutory authority.

In this case, the Board points to the circuit court's partial summary judgment in favor of the Board on the ground that the Trustees had violated the Pension Code. The *Newkirk* court rejected a similar argument:

"Plaintiffs' argument would allow a collateral attack on an order whenever the agency has failed to follow the exact letter of a statutory provision. A party could merely point to any provision of a statute which was not complied with and claim that the agency did not have authority to act unless the provision was complied

with.*** To accept plaintiffs' argument would be to disregard the distinction between agency orders which are void and subject to collateral attack, and those which are merely voidable and subject to attack only through the applicable administrative and judicial review proceedings. We decline to adopt such a rule." *Newkirk*, 109 Ill. 2d at 39, 485 N.E.2d at 326.

In this case, the Trustees have the statutory authority to calculate pensions. 40 ILCS 5/7—116 (West 2006). Even assuming *arguendo* that the Trustees miscalculated the pensions, their decision would be merely voidable, not void. Thus, the Board's argument fails.

### III

■ The Board also argues that the circuit court erred in refusing to allow the Board to file an amended complaint to show that the Trustees' decision was not an "administrative decision" subject to the Administrative Review Law. Generally, leave to amend a complaint is freely given:

> "In order to determine whether the circuit court abused its discretion in denying a motion to file an amended complaint, the court looks at four factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether the parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 62, 845 N.E.2d 689, 701 (2005).

If the proposed amendment would fail to cure the defect in the pleading, the other factors—which revolve around the issue of timeliness—need not be considered. See *Keefe-Shea Joint Venture*, 364 Ill. App. 3d at 62, 845 N.E.2d at 701-02. The standard of review for the denial of a motion for leave to file an amended complaint is whether the trial court abused its discretion, which will be found only where no reasonable person would take the view adopted by the trial court. *Keefe-Shea Joint Venture*, 364 Ill. App. 3d at 61, 845 N.E.2d at 701. An application of impermissible legal criteria will also justify a reversal in this context. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314, 614 N.E.2d 1194, 1198-99 (1993).

Here, the Board sought leave to amend to show that, in awarding teachers pension credit, the Trustees essentially "rubber-stamped" the recommendations of its staff, without conducting hearings or analysis of the staff's calculations. Thus, the Board argues that this case does not involve "administrative decisions" as defined by the statute, but challenges a general policy that went unchallenged in the underlying pension proceedings. The Board relies on *Klomann v. Il-*

*linois Municipal Retirement Fund*, 284 Ill. App. 3d 224, 227-28, 674 N.E.2d 38, 40-41 (1996), but the court in that case merely followed *Billik* in holding that neither the village nor the Illinois Municipal Retirement Fund could change the statutory requirements for pension eligibility. Moreover, in *Klomann*, the village and the agency reversed their determination before Klomann received any benefits, further supporting the conclusion that the decision was not final.

As noted earlier, an administrative decision includes "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 2006). The Board acknowledges in its brief that an adversarial proceeding is not essential, where there has been definitive action by an agency and a communication of the decision to the affected party. See, *e.g.*, *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 220, 889 N.E.2d 1167, 1176 (2008); *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 324, 750 N.E.2d 709, 716 (2001). Moreover, as the circuit court noted in its dismissal order, this court has ruled in other cases that challenges to errors in calculating pensions were decisions subject to the requirements of the Administrative Review Law. *E.g.*, *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 230-31, 794 N.E.2d 1055, 1057-58 (2003); *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773-74, 533 N.E.2d 927, 930 (1989).

However, cases like *Sola* and *Rossler* are distinguishable on the ground that they involved disputes between a pension board and a pensioner, entities unlike the Board, which was not a party to any of the underlying proceedings. The Board explicitly raised this point in its motion to reconsider. In its appellate brief, the Board distinguishes the instant facts from *Karfs v. City of Belleville*, 329 Ill. App. 3d 1198, 770 N.E.2d 256 (2002), another case relied upon by the circuit court.

In *Karfs*, the City of Belleville appealed from an order finding that the city was bound by the finality of the decision made by the codefendant Board of Trustees of the Firefighters' Pension Fund of the City of Belleville to award a monthly disability benefit of $2,481.02 to Karfs. On appeal, the city claimed that the trial court erred in determining that the city was bound by the award, arguing that because it was not a proper party to the proceeding before the agency, it could not have sought administrative review of that decision and, therefore, it was not bound by the 35-day limitation period for seeking review of administrative decisions. *Karfs*, 329 Ill. App. 3d at 1200, 770 N.E.2d at 257. The Fifth District of this court rejected the argument, reasoning as follows:

"Only those parties to an administrative proceeding whose rights, privileges, or duties are affected by the decision of the administrative agency may seek the review of its decision. *Peterson v. Board of Trustees of Firemen's Pension Fund*, 5 Ill. App. 3d 180, 183, 281 N.E.2d 368, 370 (1971), *aff'd on other grounds*, 54 Ill. 2d 260, 296 N.E.2d 721 (1973). Under the Code, the City is charged with the obligation to administer the firefighters' pension fund (40 ILCS 5/4—101 (West 1994)) and is required to levy a tax sufficient to meet the annual actuarial requirements of the pension fund (40 ILCS 5/4—118(a) (West 1994)). The City has some discretion in determining the dollar amount to be levied in order to ensure a sufficient reserve. See *Board of Trustees of Police Pension Fund v. City of Rockford*, 96 Ill. App. 3d 102, 107-08, 420 N.E.2d 1126, 1130-31 (1981). Thus, the City has some interest in certain decisions of the pension board in the context of its duty to levy sufficient taxes for the benefit of all firefighters. See *Peterson*, 5 Ill. App. 3d at 183, 281 N.E.2d at 370.

If, for example, in deciding a firefighter's pension benefit, the pension board uses or approves a method of calculation that is prohibited by the Code or violates the labor contract, that decision may be deemed to have a direct impact on a municipality's duty to levy taxes in sufficient proportions to enable the pension system to function, because it is reasonably likely that the pension board would continue to use an improper method to calculate other pensions, resulting in a depletion of the fund. Under those facts, the municipality could seek a review of the agency's decision because the decision potentially impacts the municipality's duty to provide a sufficient sum to meet the requirements of the pension fund. We caution that the pension board's decision must impact a duty or interest of the municipality. A municipality will not have an interest in and standing to seek the review of each individual case that comes before the pension board. Furthermore, a municipality has no authority to review or modify adjudicative decisions made by an administrative agency. See *Board of Trustees of Police Pension Fund v. Washburn*, 153 Ill. App. 3d 482, 486-87, 505 N.E.2d 1209, 1212-13 (1987).

In this case, the City has alleged that the Board's original calculation of total base pay was illegal and would result in a diminution of the pension fund because each eligible firefighter was permitted to increase his total base pay by including unused sick and vacation pay, without making any additional individual contribution to the pension fund. Based upon the allegations, the Board's decision to award pensions based upon an illegal method of calculation could have an adverse impact on the City's duty to levy sufficient taxes to enable the pension system to function. Under these circum-

stances, the City could have sought a review of that decision within the 35-day period permitted in the Administrative Review Law (735 ILCS 5/3—103 (West 1994)). It did not do so. The City has not claimed that it was unaware of the Board's decision.

Where a statute provides that the administrative decisions of an agency are subject to the Administrative Review Law, that statute is the exclusive method for the review of an administrative agency's final decision. Section 4—139 of the Code expressly adopts the Administrative Review Law. 40 ILCS 5/4—139 (West 1994). In this case, the City failed to seek review within 35 days of the Board's decision and could not seek a modification of the award thereafter, because the statutory review period had expired." *Karfs*, 329 Ill. App. 3d at 1204-05, 770 N.E.2d at 260-61.

We have quoted from *Karfs* at length because we believe it is relevant on certain points favoring the Board. Unlike the other cases cited by the parties, *Karfs* centers on the unusual situation in which a case is brought by a third-party governmental entity whose finances are affected by the actions of a pension board. *Karfs* recognizes that a third party—like the Board in this appeal—may challenge a method of calculation as being prohibited by the Pension Code. *Karfs* also recognizes that such a third party will not have an interest in and standing to seek the review of each individual case that comes before the pension board, but will have standing to challenge the decision regarding the calculation at issue.

Nevertheless, *Karfs* is distinguishable from the instant facts in one key aspect. *Karfs* suggests that a third party must seek review of the calculation decision within the 35-day period permitted in the Administrative Review Law. However, *Karfs* involved an individualized miscalculation, whereas the alleged miscalculation in this case was systemic.

A systemic miscalculation falls outside the definition of an "administrative decision" under the review law. It is not a "decision, order or determination of any administrative agency rendered in a particular case," but a "rule[ ], regulation[ ], standard[ ], or statement[ ] of policy." 735 ILCS 5/3—101 (West 2006). Moreover, even assuming *arguendo* that the internal procedures producing the alleged miscalculation here were sufficiently quasi-judicial to constitute an "administrative decision," the review law's 35-day clock starts when the decision sought to be reviewed is served upon the party affected by the decision, and no such notification appears to have been given to the Board in this case. The Trustees and the Retired Teachers note that members of the Board also are members of the Trustees, but there does not appear to be any evidence that even those members

were notified of the decision to calculate the underlying pensions at issue in this appeal in a particular manner.

■ Based on the record to date, we conclude that the Board's proposed amendment, to the extent that it alleged the systemic decision of the Trustees to calculate the pensions of the affected retirees in the manner it did, the Trustees' later decision to continue to pay the affected retirees based at a higher rate while abandoning that manner of calculation for new retirees, as well as the lack of notice to the Board regarding the methods used to calculate the pensions, cured any defects in the Board's initial complaint. Nor do the timeliness factors weigh against amendment in this case. The Board had no need to file a proposed amended complaint until after its complaint—on which the circuit court had already granted partial summary judgment—was dismissed when the circuit court treated the Retired Teachers' filing as a motion to dismiss. If any party to the litigation was surprised by this procedural history, it was the Board, not the Trustees or the Retired Teachers. The trial court appears to have mistakenly relied on cases like *Sola*, *Rossler*, and *Karfs*, which are distinguishable, given the issues presented in the underlying complaint. Thus, we conclude that the trial court erred in rejecting the Board's proposed amended complaint.

## CONCLUSION

For all of the aforementioned reasons, the order of the circuit court of Cook County denying the Board leave to file an amended complaint is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

O'BRIEN, P.J., and GALLAGHER, J., concur.