BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF EVANSTON *et al.*, Plaintiffs-Appellants, v. THE CITY OF EVANSTON *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—2227

Opinion filed June 20, 1996.

1048

O'BRIEN, J., specially concurring.

Ralph E. Brown and Randall L. Mitchell, both of Schuyler, Roche & Zwirner, of Chicago, for appellants.

Jack M. Siegel, of Altheimer & Gray, of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

We review the authority, if any, of elected city councils to ignore the recommendations of a police pension board on the level of funding for police pensions under Illinois law. We conclude that a city council need not accept the dollar amount recommended to it by a police pension board, but that it must follow Illinois law in calculating the amount it selects as an alternative.

The Board of Trustees of the Police Pension Fund (the Board) for the City of Evanston filed a lawsuit against the city and its elected council to enforce compliance with the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 1—101 et seq. (now 40 ILCS 5/1—101 et seq. (West 1994)). The suit alleges the tax levied by the Evanston city council to fund police pensions for fiscal year 1987-88 yielded an amount below the amount certified by the Board as necessary to comply with Pension Code requirements. The city council responded to the Board's six count second amended complaint with a motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). The trial court granted the motion, and the Board appealed. We affirm in part and reverse and remand in part.

The Pension Code governs pension systems for state and municipal employees. Article 3 of the Pension Code governs police pension funds created by municipalities of 500,000 and under, which includes Evanston. 40 ILCS 5/3—101 et seq. (West 1994).

Section 3—125 of the Code requires a city council to levy a tax that will meet the "annual requirement" of the police pension fund. The annual requirement is defined as the money expended in the current year and the amount necessary to amortize the fund's unfunded accrued liabilities as provided in section 3—127. 40 ILCS 5/3—125 (West 1994).

Section 3—127 directs the Board to maintain a reserve to amortize the fund's unfunded accrued liabilities. In an annual report to the city council, the Board must designate an amount needed that year to insure that the reserve will reach the level of the fund's accrued liabilities over a period of years, currently 40. 40 ILCS 5/3—127 (West 1994).

Section 3—143 of the Code directs the Board to "certify" in its report the estimated amount needed in the calendar year to "meet the annual requirements of the fund as provided in Section 3—125." 40 ILCS 5/3—143 (West 1994).

The Board held a public hearing on January 27, 1987, to decide the amount it would certify to the city council to fund police pensions for fiscal year 1987-88. The Board considered a report from the Illinois Department of Insurance that calculated the amount needed to be $2,215,561. The Board passed a resolution adopting this amount and certified it in a report to the city council. The city council subsequently levied a tax for the police pension fund that would yield $1,390,263—$825,298 less than the amount certified by the Board.

The Board, as fiduciary for participants in the police pension fund, filed the complaint before us to require the city council to levy a tax that would yield the amount it had certified.

Counts I, II, and III, for *mandamus*, mandatory injunction, and declaratory judgment, respectively, are based on the theory that the city council must levy a tax for the police pension fund that will produce an amount the Board has certified as the annual requirement. Counts IV and V, for *mandamus* and declaratory judgment, respectively, seek relief on an alternative theory that the city council must levy a tax that will yield an amount that has been calculated in a way that complies with the Pension Code. Count VI, for breach of fiduciary duty, alleges that even if the city council has discretion to determine the amount of the annual requirement, it has a fiduciary duty to levy a tax consistent with the requirements of the Pension Code.

The trial court dismissed all counts of the Board's second amended complaint. For the reasons that follow, we affirm the dismissal of counts I, II, III, IV, and VI, but reverse the dismissal of count V and remand.

A motion to dismiss admits all well-pled facts and reasonable inferences that could be drawn from those facts. *Horwath v. Parker*, 72 Ill. App. 3d 128, 134, 390 N.E.2d 72 (1979). We review the dismissal of the Board's second amended complaint *de novo. Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 615 N.E.2d 50 (1993).

■ Count I alleges that the city council levied a tax that "does not conform to the determination of the Board" and "violated the Board's exclusive power to control and manage the Evanston Police Pension Fund and the Board's clear legal right to require a tax levy in conformity with its determination of the amount necessary to meet the annual requirements of the Evanston Police Pension Fund." The court is asked to direct the city council to enact an ordinance that levies a tax in the amount certified by the Board.

The Board argues on appeal that *mandamus* should issue because the statutory language of the Pension Code permits the Board no discretion as to the amount to be financed and permits the city council no discretion to levy a tax in an amount less than the amount to be financed as certified by the Board. We disagree and believe the disposition of count I is controlled by the decision in *Board of Trustees v. Rockford*, 96 Ill. App. 3d 102, 420 N.E.2d 1126 (1981).

In *Rockford*, the boards of trustees of the police and firemen's pension funds certified sums in reports to the city council to meet the financial obligations of the funds, based upon actuarial calculations furnished to them by the Illinois Department of Insurance. When the city council levied taxes in amounts below the certified amounts, the boards sued for a writ of *mandamus* to compel the city council to levy a tax in the amounts certified. In response to the boards' argument that statutory language requires the city council to levy a tax in the amount certified by the boards, the court stated:

> "While sections 3—125 and 3—127 and sections 4—118 and 4—120 of the [Pension Code] are couched in mandatory language in that the word 'shall' is used, we find no specific reference to the actuarial findings of the Illinois Department of Insurance indicating that its calculations are binding on the city council. Since the tax levy requested by the pension boards is derived from the actuarial findings of the Illinois Department of Insurance, the question at issue is whether the city council has any discretion to depart from these findings in enacting the tax levy for the police and firemen's pension funds." *Rockford*, 96 Ill. App. 3d at 106-07.

The court then explained that *mandamus* cannot lie to force a legislative body to perform a discretionary act. The court concluded:

> "While the finance and reserve sections of the Illinois Pension Code (sections 3—125 and 3—127 for police pensions and 4—118

and 4—120 for firemen's pensions) are clearly designed to insure the financial integrity of these pension funds, we do not believe it was their purpose to remove all discretion from the city council in determining the dollar amount to be levied for these funds in any particular year and to require the city council to accept the Police Board and the Firemen's Board reports as mandatory in that regard. Since we do not interpret the statutes in question in this rigid manner, the enactment of the pension tax levies by the Rockford City Council was not a mere ministerial act subject to the writ of *mandamus*." *Rockford*, 96 Ill. App. 3d at 108.

The Board contends that *Rockford* is no longer authority for the proposition that the city council has discretion to levy a lesser sum than that certified by the Board. It points out that section 3—127 of the Pension Code contained a provision in 1981 that required the Board to establish a reserve "not less than $10,000 for each policeman and each beneficiary in each of the municipalities subject to this Article." Ill. Rev. Stat. 1981, ch. 108$^{1}/_{2}$, par. 3—127. The legislature deleted this language in 1983. Relying on the concurring opinion in *Rockford*, which suggested that the city council was required to levy a tax generating at least $10,000, the Board argues "the amendments eliminated all discretion from the financing formula."

Even if we accept the reasoning of the concurring opinion in *Rockford* as authority for the proposition that city councils in 1981 were obligated to levy at least a minimum $10,000, we fail to see how the deletion of the minimum requirement now compels the conclusion that the legislature intended the city council to accept the figure certified by the Board. No other language was modified or added. Whatever the legislature intended when it deleted the requirement that the Board maintain a $10,000 minimum reserve, we cannot go beyond the plain meaning of the language it left behind. That language is the same as that relied upon by the majority in *Rockford* to conclude that the city council is not bound by the Board's certified figure.

■ Count II alleges that the Board is an administrative agency and that the provisions of the Illinois Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*) govern proceedings for judicial review of final administrative decisions of the Board under section 3—148 of the Pension Code (40 ILCS 5/3—148 (West 1994)). The count alleges that the city council was prohibited from passing an ordinance that violated the Board's order because the city council did not seek review of the Board's certification of the amount required for the police pension fund. The Board seeks an injunction to enforce its "final administrative decision concerning the necessary level of funding."

We believe the disposition of count II is controlled by the decision in *Latham v. Board of Education*, 31 Ill. 2d 178, 201 N.E.2d 111 (1964).

In *Latham*, the School Code was challenged on the grounds that the Board of Education was given an unconstitutional power to tax. The court stated "even though all preliminary steps have been taken by the Board and a final budget has been adopted, not a penny of [fund] taxes will be forthcoming without the adoption by the city council of an ordinance levying the tax." *Latham*, 31 Ill. 2d at 181-82.

The Board's certification of the annual requirement is not a "final administrative decision." The city council is vested with the authority to take the final action: adopting an ordinance levying the tax.

■ Count III asks the trial court to declare that the Board has the power under the Pension Code to determine the amount needed annually to insure the police pension fund's reserve and "the power to determine the amount of taxes which must be levied." It also asks the court to declare that "the council must enact an ordinance to carry out the Board's determination." Count III is, in fact, a predicate for the *mandamus* argument in count I, though the Board's complaint and brief address them in reverse order. *Mandamus* will not lie unless the city council is without discretion to accept or reject the certified figure of the Board.

The city council responds that *Rockford* is dispositive of the issue and that the amendment to section 3—127 cannot be read to divest the council of discretion to accept or reduce the Board's figure. Since we accept this argument and find no ambiguity in the language of section 3—127 after the amendment, we need not go beyond the language of the statute, nor address the argument of the city council that the legislative history of the amendment of section 3—127 does not support the Board's interpretation.

The Board makes yet another argument in support of a nondiscretionary reading of sections 3—125 and 3—127. It points out that the supreme court cases that are cited in support of a discretionary reading, such as *Latham*, were decided under the 1870 Constitution, where the power the Board now claims would have been an unconstitutional delegation. The Board then cites to *Polich v. Chicago School Finance Authority*, 79 Ill. 2d 188, 402 N.E.2d 247 (1980), where the court upheld the legislative delegation to the Chicago school finance authority to "demand and direct the City Council of the City to provide by ordinance for the levy and collection of a direct annual tax" to discharge the bond obligations incurred by the authority. Even if we accept, for the sake of argument, the power of the legislature under the 1970 Constitution to delegate similar authority

to police pension boards, we find nothing in the language of sections 3—125 and 3—127 comparable to the precise language delegating power to the Chicago school finance authority.

■ Count IV is the same as count I, except count IV alleges the amount certified by the Board is the minimum mandated by sections 3—125 and 3—127. The Board reads these sections to remove all discretion from the city council. We reject count IV for the same reasons set out in our analysis of count I.

■ Count V alleges that the city council did not comply with the Pension Code and asks the court to declare that the city council must pass an annual ordinance for a tax levy that meets the "requirements" of sections 3—125 and 3—127 of the Code.

Count V, unlike count III, does not ask the court to declare that the city council was required to accept the figure certified by the Board. Rather, it asks the court to enter a declaratory judgment that the levy did not comply with the calculations that must be made under sections 3—125 and 3—127 to reach the annual requirement figure. The city council offered no evidence that shows how the levy was calculated. Nothing in the motion to dismiss or in the affidavits raised an affirmative matter to defeat the Board's allegation. We find the trial court erred in dismissing count V because the issue of whether the city council complied with the requirements of sections 3—125 and 3—127 in setting its levy is a question of fact to be determined by a trier of fact.

■ Count VI alleges that the city council owes a fiduciary duty to the police pension fund and breached that duty when it failed to levy a tax in an amount that yields the minimum amount necessary to meet the annual requirement of the fund.

The city council argues that it is not a fund fiduciary as defined by the Pension Code. We agree. The Code defines a "fund fiduciary" as one who has "discretionary authority or discretionary responsibility in the administration of" a retirement system. 40 ILCS 5/1—101.1(a) (West 1994). The Pension Code grants the Board "exclusive" power to control and manage the fund under section 3—132. 40 ILCS 5/3—132 (West 1994). The city council does not have discretionary authority in the administration of the retirement system. It merely generates the pension fund tax receipts which are then passed to the fund for administration by the Board.

We affirm the trial court's dismissal of counts I, II, III, IV, and

VI. We reverse the dismissal of count V and remand for proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

HOFFMAN, P.J., concurs.

JUSTICE O'BRIEN, specially concurring:

While I concur with the result in the opinion of the learned majority, I disagree with its reliance on *Rockford* on one narrow issue: that acceptance of the amortization figure designated by the Board is discretionary. In so doing, the majority minimizes the difference between the language of the statute in the *Rockford* case and that in the case at bar. As the majority points out, the statute in force when *Rockford* was decided provided the council with the option of utilizing a $10,000 statutory baseline instead of the Board's designated amortization figure. Ill. Rev. Stat. 1981, ch. 108½, par. 3—127. The legislature deleted this language in 1983.

The majority states, "Whatever the legislature intended when it deleted the requirement that the Board maintain a $10,000 minimum reserve, we cannot go beyond the plain meaning of the language it left behind." 281 Ill. App. 3d at 1052. It concludes that, based upon the language left behind, the council is not required to levy a tax in any specific amount determined by the Board because the council "is not bound by the Board's certified figure." I agree with the premise, but find the majority's analysis faulty in that it incorrectly lumps discretion regarding the Board's "certified" tax levy figure together with discretion regarding the Board's "designated" amortization figure.

Section 3—125 establishes a formula pursuant to which the council is directed to finance the fund. It states that the council "shall annually levy a tax," at a rate necessary to produce an amount which, when added to the payroll deductions from police officer wages and other available revenues, equals a sum sufficient to meet the annual requirements of the fund. It further states, "The annual requirements to be provided by such tax levy are equal to (1) the normal cost of the pension fund for the year involved, plus (2) the amount necessary to amortize the fund's unfunded accrued liabilities *as provided in Section 3—127.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 108½, par. 3—125 (now 40 ILCS 5/3—125 (West 1994). Thus, the statutory financing formula is:

Tax Levy  Payroll Deductions  Other Revenues = Normal Cost  Amortization Figure (hereafter, the Financing Formula).

The Financing Formula is thus comprised of at least five separate and very distinct components. Of these, section 3—143 requires the Board to report annually to the council and "certify" the fund's current assets, payroll deductions, other revenues, normal cost and amortization figure as used by the Board in its calculation of the Financing Formula. Ill. Rev. Stat. 1991, ch. 108½, par. 3—143 (now 40 ILCS 5/3—143 (West 1994). Notably, however, section 3—127 further directs the Board to "designate" the amortization figure so the Fund accumulates reserves equal to its estimated total actuarial requirements. Ill. Rev. Stat. 1991, ch. 108½, par. 3—127 (now 40 ILCS 5/3—127 (West 1994).

In my view, the deletion of the $10,000-per-person statutory baseline option for the amortization figure (whether done in response to *Rockford* or not) eliminates the council's entitlement to exercise its discretion regarding the value to be inserted as the amortization figure when it computes the funding formula. Indeed a plain reading of the language left behind requires the council to accept and utilize the Board's "designated" amortization figure. To reiterate, section 3—125 states that the council "shall annually levy a tax" and:

> "The annual requirements to be provided by such tax levy are equal to (1) the normal cost of the pension fund for the year involved, plus (2) the amount necessary to amortize the fund's unfunded accrued liabilities *as provided in Section 3—127.*"

(Emphasis added.) Ill. Rev. Stat. 1991, ch. 108½, par. 3—125. Section 3—127 requires the Board to "designate" the amount necessary to amortize the fund's unfunded accrued liabilities. Ill. Rev. Stat. 1991, ch. 108½, par. 3—127. These statutes, read together, admit of no modification. "Shall" means "shall," not "maybe," "perhaps," "often," "could," "might," or a host of others. The plain, mandatory language used by the legislature clearly requires the Board to "designate" the amortization figure to be used in the Financing Formula and the council to employ the amortization figure thus "provided" in its own calculation of the necessary Tax Levy.

This analysis stands to reason. In the Financing Formula, every component save the amount needed to amortize the fund's unfunded accrued liabilities can be changed. Additional police officers can change the payroll deductions; administrative layoffs can change the normal cost of current operation of the fund for the year; property values can change the amounts provided by a tax levy; other revenues can be received from the federal government. Only the amount needed to amortize the fund's unfunded accrued liabilities—its established debts—is an unchanging figure. And it is a figure the Board is most capable of calculating accurately since it is the Board,

not the council, that is charged by statute with "exclusive" power to control and manage the fund (Ill. Rev. Stat. 1991, ch. 108$^{1}/_{2}$, par. 3—132 (now 40 ILCS 5/3—132 (West 1994))) and that is vested with "responsibility" in its administration (Ill. Rev. Stat. 1991, ch. 108$^{1}/_{2}$, par 1—101.1(a) (now 40 ILCS 5/1—101.1(a) (West 1994))).

For the foregoing reasons, I agree with the majority and the ultimate holding of *Rockford* that the Pension Code does not require the council to impose a tax levy in the amount certified by the Board. However, I find the language in section 3—125 is nondiscretionary as it relates to the Board's designated amortization figure. I believe the council must accept and utilize the Board's amortization figure even if the council finds it necessary to alter the values plugged into the remaining components of the Financing Formula from those certified by the Board.