# Illinois Official Reports

## Appellate Court

---

**Board of Trustees of the Riverdale Police Pension Fund v. Village of Riverdale,**
**2014 IL App (1st) 130416**

---

Appellate Court
Caption

THE BOARD OF TRUSTEES OF THE RIVERDALE POLICE PENSION FUND, Plaintiff-Appellant, v. THE VILLAGE OF RIVERDALE, Defendant-Appellee.

District & No.

First District, Sixth Division
Docket No. 1-13-0416

Filed

June 27, 2014

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action by the police pension fund of defendant village alleging that the village breached its statutory funding obligations under the Pension Code, the trial court properly entered summary judgment for the village to the extent that the pension fund did not meet its burden of presenting any statutory language establishing that the fund had a contractual right to any specified level of funding, especially in the absence of evidence that there was a risk that benefits would be denied or an allegation that the fund was on the verge of default or imminent bankruptcy, but the village was liable to the fund for the portions of the taxes the village levied for the fund that were deposited instead into the village's "pooled account" and used for the village's general operations.

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 11-CH-35736; the Hon. Franklin Valderrama, Judge, presiding.

Judgment

Affirmed in part and reversed in part; cause remanded for additional proceedings.

Counsel on
Appeal

Puchalski Goodloe Marzullo, LLP, of Libertyville (Richard J. Puchalski and Jeffrey A. Goodloe, of counsel), for appellant.

Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson, Michael J. McGrath, Richard F. Bruen, Jr., and Sara Gallagher, of counsel), for appellee.

Dobrovolny Law Offices, of Urbana (James L. Dobrovolny, of counsel), for *amicus curiae* Illinois Public Pension Fund Association.

Illinois Municipal League, of Springfield (Brian Day and Roger Huebner, of counsel), *amicus curiae*.

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, the Board of Trustees of the Riverdale Police Pension Fund (Pension Board),[1] appeals the order of the circuit court granting summary judgment in favor of defendant, the Village of Riverdale (Village),[2] and denying partial summary judgment in favor of plaintiff. Plaintiff contends the circuit court erred in finding sections 3-125 and 3-127 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-125 (West 2008); 40 ILCS 5/3-127 (West 2010)) did not provide plaintiff with a contractual right to a specified level of funding of the Riverdale Police Pension Fund (Pension Fund). Plaintiff additionally contends the circuit court erred in failing to find defendant liable for underfunding the Pension Fund. Based on the following, we affirm in part and reverse in part and remand for additional proceedings.

¶ 2                                      FACTS

¶ 3    Defendant Village is a municipality as defined by section 3-103 of the Pension Code. 40 ILCS 5/3-103 (West 2010). In accordance with section 3-101 of the Pension Code, the Village

---

[1] The Illinois Public Pension Fund Association filed a brief in support of plaintiff as an *amicus curiae*.

[2] The Illinois Municipal League filed a brief in support of defendant as an *amicus curiae*.

established the Pension Fund for the benefit of the municipality's police officers, participants, and beneficiaries. See 40 ILCS 5/3-101 (West 2010). Plaintiff Pension Board is an administrative agency created by the Pension Code (40 ILCS 5/3-128 (West 2010)) with the exclusive authority to control and manage the Pension Fund (40 ILCS 5/3-132 (West 2010)). In addition, the Pension Board has the authority to order the payment of pensions and other benefits to beneficiaries. 40 ILCS 5/3-132 (West 2010). Section 3-143 of the Pension Code directs the Pension Board to "certify" in an annual report the estimated amount necessary in the calendar year to "meet the annual requirements of the fund as provided in Section 3-125 and 3-127." 40 ILCS 5/3-143 (West 2010).

¶ 4        Section 3-125 of the Pension Code provided:[3]

"The city council or the board of trustees of the municipality shall annually levy a tax upon all the taxable property of the municipality at the rate on the dollar which will produce an amount which, when added to the deductions from the salaries or wages of police officers, and revenues available from other sources, will equal a sum sufficient to meet the annual requirements of the police pension fund. The annual requirements to be provided by such tax levy are equal to (1) the normal cost of the pension fund for the year involved, plus (2) the amount necessary to amortize the fund's unfunded accrued liabilities as provided in Section 3-127. The tax shall be levied and collected in the same manner as the general taxes of the municipality, and in addition to all other taxes now or hereafter authorized to be levied upon all property within the municipality, and shall be in addition to the amount authorized to be levied for general purposes as provided by Section 8-3-1 of the Illinois Municipal Code, approved May 29, 1961, as amended. The tax shall be forwarded directly to the treasurer of the board within 30 business days after receipt by the county.

The police pension fund shall consist of the following moneys which shall be set apart by the treasurer of the municipality:

(1) All moneys derived from the taxes levied hereunder;

(2) Contributions by police officers under Section 3-125.1;

(3) All moneys accumulated by the municipality under any previous legislation establishing a fund for the benefit of disabled or retired police officers;

(4) Donations, gifts or other transfers authorized by this Article." 40 ILCS 5/3-125 (West 2008).

¶ 5        Section 3-127 of the Pension Code provides:

"The board shall establish and maintain a reserve to insure the payment of all obligations incurred under this Article excluding retirement annuities established under Section 3-109.3. The reserve to be accumulated shall be equal to the estimated total actuarial requirements of the fund.

If the pension fund has a reserve of less than the accrued liabilities of the fund, the board of the pension fund, in making its annual report to the city council or board of trustees of the municipality, shall designate the amount, calculated as a level percentage of payroll, needed annually to insure the accumulation of the reserve to the level of the fund's accrued liabilities over a period of 40 years from July 1, 1993 for

---

[3]The statute has since been amended.

pension funds then in operation, or from the date of establishment in the case of a fund created thereafter, so that the necessary reserves will be attained over such a period." 40 ILCS 5/3-127 (West 2010).

¶ 6    Moreover, pursuant to section 22-403 of the Pension Code, the pension funds may only be expended for public purposes and not for any corporate purposes. 40 ILCS 5/22-403 (West 2010).

¶ 7    On August 19, 2010, the Pension Board filed the underlying case seeking a declaratory judgment where it alleged the Village breached its statutory funding obligations under sections 3-125 and 3-127 of the Pension Code (40 ILCS 5/3-125 (West 2008); 40 ILCS 5/3-127 (West 2010)) by failing to levy the appropriate taxes for pension contributions from 2000 through 2010. Plaintiff requested a judgment declaring that the Village's tax levies and amounts contributed to the Pension Fund were insufficient and requiring the Village to annually assess taxes in concert with sections 3-125 and 3-127 of the Pension Code. Plaintiff further requested an order requiring the Village to turn over all pension contributions in its possession.

¶ 8    According to the Pension Board's complaint, the Illinois Department of Insurance regulates public pension funds, such as the one at issue here. In that capacity, the Illinois Department of Insurance issues an annual report to the Pension Board indicating the tax amount, as determined by an actuary, necessary to meet the municipal contribution requirements provided by the Pension Code. The actuarial report then is forwarded by the Pension Board to the Village. According to the Pension Board's complaint, the Village did not follow the recommendations of the Illinois Department of Insurance during certain fiscal years and, as a result, as of the end of the 2005 fiscal year, the Village owed the Pension Fund a sum of approximately $615,408.

¶ 9    On January 12, 2011, the Village filed its initial answer, and discovery ensued. In an interrogatory sent by the Pension Board to the Village, the Pension Board inquired:

"As of this date, is there any amount of money owed to the Riverdale Police Pension Fund, for annual pension fund contributions by Defendant from its General Fund, or any other Village Fund to the Pension Fund, and if so state:

(a) the exact amount owed to the Pension Fund;

(b) the specific reason why the defendant filed, refused or neglected to deposit property taxes levied, collected and received by the defendant on behalf of the plaintiff, with the Pension Fund;

(c) If the defendant admits that it failed, refused or neglected to deposit property taxes levied, collected and received by it, on behalf of the Pension Fund, state what the defendant did with those property taxes and if these funds were used by the Village, what the defendant used those funds for."

The Village responded that there was money owed to the Pension Fund due to an "accounting practices" oversight. The Village stated that the funds owed to the Pension Fund were deposited into the "Village pooled account" and used "for general operations." Then, in response to the Pension Board's request to admit facts, the Village stated that, from 2003 to 2010, it did not follow the tax levy recommendations issued by the Illinois Department of Insurance and did not retain its own actuary to determine the appropriate tax levy amounts pursuant to section 3-125 of the Pension Code. In addition, the Village revealed the taxes levied in comparison to those recommended by the Illinois Department of Insurance, such that:

(1) for 2003, the recommendation was $432,261 and the Village levied $420,000; (2) for 2004, the recommendation was $473,860 and the Village levied $262,940; (3) for 2005, the recommendation was $486,673 and the Village levied $262,940; (4) for 2006, the recommendation was $603,772 and the Village levied $280,000; (5) for 2007, the recommendation was $651,990 and the Village levied $440,000; (6) in 2008, the recommendation was $754,607 and the Village levied $440,000; (7) in 2009, the recommendation was $849,300 and the Village levied $440,000; and (8) in 2010, the recommendation was $1,018,396 and the Village levied $866,168.

¶ 10    In August 2011, the Pension Board filed a motion for partial summary judgment as to liability, arguing that it was entitled to summary judgment where it was undisputed that money was owed to the Pension Fund due to the Village's failure to remit those property taxes received by the Village but not transferred to the Pension Fund and its failure to comply with the tax levy recommendations issued by the Illinois Department of Insurance. The Village responded that summary judgment was not proper because the Pension Code did not yet require the Pension Fund to be fully funded and such a finding was not proper pursuant to *McNamee v. State of Illinois*, 173 Ill. 2d 433 (1996). On February 17, 2012, the circuit court denied the Pension Board's motion for partial summary judgment without expressing its basis for doing so and provided the Village with the opportunity to file affirmative defenses. In response, the Village filed the affirmative defense that the Pension Code did not require the Pension Fund to be fully funded yet.

¶ 11    On June 22, 2012, after the close of discovery, the Village filed a motion for summary judgment, arguing that it was not liable pursuant to *McNamee* because the Pension Board did not allege any Pension Fund participant had been denied benefits due to alleged underfunding and there was no evidence the benefits had been impaired. The Village additionally cited *People ex rel. Illinois Federation of Teachers v. Lindberg*, 60 Ill. 2d 266 (1975), and argued that section 5 of article XIII of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) does not create a contractual basis for pension fund participants to expect a particular level of funding, but instead only provides the right to benefits upon retirement. The Village included its expert witness' testimony that there was no measurable actuarial damage caused to the Pension Fund as a result of the alleged underfunding and no default on payments to beneficiaries of the Pension Fund. Additionally, the Village argued that the Pension Board failed to provide any evidence that the Pension Fund was on the verge of default or imminent bankruptcy. Attached to the motion was the deposition transcript of the Village's actuary expert, Arthur Tepfer, a letter from Tepfer to the Village's counsel dated April 16, 2012,[4] and a letter from the Village's counsel to Tepfer dated May 22, 2012,[5] as well as the Pension Board's complaint and the Village's affirmative defenses.

---

[4]This letter advises the Village's counsel as to the documents Tepfer reviewed in preparation of his actuarial opinion, which included, *inter alia*, the court pleadings, the Pension Fund's actuarial reports for 1998-99 and 2007-08, the Pension Fund's balance sheet, audit reports for the Village for 2000 and 2002-10, the Illinois Department of Insurance actuarials, and property tax levy and distribution documents.

[5]The letter advises Tepfer that his deposition testimony will be used to support the Village's motion for summary judgment.

¶ 12    The Pension Board responded that there were contested issues of material fact as to the amount of damages in the case, which precluded the entry of summary judgment. The Pension Board cited testimony from its witnesses establishing that the Village had a net pension obligation of over $1 million due to the Village's failure to submit pension contributions in satisfaction of the annual required amount and that the Pension Fund suffered resulting "financial damage." The Pension Board further argued that *McNamee* was distinguishable because it did not involve underfunding of a municipality's police pension fund and did not include an analysis of section 3-125 of the Pension Code. Instead, *McNamee* involved the constitutionality of an amendment to section 3-127 of the Pension Code. Moreover, in response to the Village's repeated allegation that no beneficiary had been denied pension benefits and that there was no evidence the Pension Fund was on the verge of default or imminent bankruptcy, the Pension Board stated, "so what!"

¶ 13    On January 14, 2013, in a written order, the circuit court granted the Village's motion for summary judgment. In doing so, the circuit court noted that the Village admitted it did not follow the Illinois Department of Insurance's actuarial reports for the years 2003 through 2010. The court determined that *McNamee*, as cited by the Village, was factually distinguishable from the case at bar "because it did not address the issue in this case, to wit: whether the Pension Board has a vested contractual right to the pension funding level in the Riverdale Police Pension Fund." Finding this was a case of first impression wherein there was no case law determining whether statutory funding levels may be enforced under the Pension Code, the circuit court then relied on Illinois cases dealing with statutory funding under the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). After a thorough review of *Lindberg* and *People ex rel. Sklodowski v. State*, 182 Ill. 2d 220 (1998), the circuit court held:

> "While Sections 3-125, 2-127 and 22-403 of the Pension Code are clearly designed to ensure the financial integrity of the pension funds, the Court notes that none of the sections mention any right to enforce certain statutory funding levels. Nor do any of the foregoing sections expressly give the Pension Board final decision making authority to determine the amount needed to ensure the police pension fund's reserve. In construing [s]ections 3-125, 3-127 and 22-403 of the Pension Code in their entirety, based on the plain and ordinary language therein, the Court finds that the legislature could not have intended to remove all discretion from the municipality in determining the amount of tax levies and contributions to the pension funds in any particular year. Consequently, the Court finds no genuine issue of material fact precluding the entry of summary judgment in favor of the Village."

This appeal followed.

¶ 14                                                    ANALYSIS

¶ 15    The Pension Board contends the circuit court erred in granting summary judgment in favor of the Village regarding the claim for breach of sections 3-125 and 3-127 of the Pension Code and in denying partial summary judgment in favor of the Pension Board as to the Village's liability for all amounts of contributions due and owing the Pension Fund.

¶ 16    Summary judgment should be granted where the pleadings, depositions, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010).

Summary judgment is a drastic measure that should only be granted if the movant's right thereto is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review a trial court's decision granting summary judgment *de novo*. *Id*.

¶ 17                                  I. Summary Judgment Regarding Statutory Funding

¶ 18        The Pension Board asserts that the circuit court erred in granting summary judgment on a legal theory not presented by the Village. The Pension Board argues the circuit court *sua sponte* found the Pension Board lacked standing to bring a claim against the Village where the Pension Code did not give the Pension Board a vested contractual right to statutory funding of the Pension Fund. In contrast, the Village sought summary judgment on the basis of the *McNamee* decision and because there were no measurable actuarial damages, proof that pension payments were not made to beneficiaries, or evidence that the Pension Fund faced bankruptcy.

¶ 19        In response, the Village argues that it raised the Pension Board's lack of standing as an affirmative defense and as an argument in its motion for summary judgment where it argued that the Pension Code did not yet require full funding of the Pension Fund, the Pension Fund had not suffered any measurable actuarial damage and was not on the verge of default or imminent bankruptcy, and there was no evidence that any beneficiaries had been denied benefits due to the alleged underfunding of the Pension Fund. Consequently, the Village maintains that the Pension Fund's injury is speculative and cannot form the basis of declaratory relief. In the alternative, the Village argues that standing is a matter of subject matter jurisdiction and can be considered by the court even if not raised by either party.

¶ 20        Our review of the pleadings at issue reveals that the Village did not expressly raise a lack of standing affirmative defense. Generally, the failure to raise standing as an affirmative defense results in waiver. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). However, while not express, the pleadings demonstrate that the Village essentially raised a lack of standing defense by asserting that the Pension Board's underfunding claim was speculative and lacked merit. Specifically, in its affirmative defenses, the Village argued that it did not breach its statutory duty to fund the Pension Fund where section 3-127 of the Pension Code does not require complete funding until 2033 and where numerous variables, *e.g.*, the interest rate and the particulars of the participating officers in terms of length of service, number, etc., were not within the Village's control.

¶ 21        Nevertheless, in its written order, the circuit court stated that it did not consider a standing or ripeness challenge because the Village did not expressly raise either as affirmative defenses. Notably, the cases relied upon by the circuit court to conclude that the Pension Board raised a meritless claim did not address the issue of standing. See *Sklodowski*, 182 Ill. 2d 220; *McNamee*, 173 Ill. 2d 433; *Lindberg*, 60 Ill. 2d 266 (considering whether there was a contractual right to funding based on the pension protection clause (Ill. Const. 1970, art. XIII, § 5)). Therefore, although the parties seemingly agree that summary judgment was granted based on the Pension Board's lack of standing, no such finding was made by the circuit court.[6]

_____

[6]As a result, we need not address the parties' additional arguments regarding standing.

¶ 22    As to the Pension Board's argument that the circuit court's basis for granting summary judgment was *sua sponte* and, therefore, improper, we disagree. The Village's motion for summary judgment argued that judgment was proper as a matter of law because there were no proven injuries to beneficiaries and, pursuant to *McNamee*, there was no constitutional or contractual right to a particular level of funding. Review of the circuit court's written order demonstrates that it considered *McNamee* at length and found it distinguishable where it did not deal with the "specific issue," namely, "whether statutory funding levels may be enforced under the Pension Code." The circuit court considered the issue before the court to be one of first impression and relied on cases dealing with the pension protection clause for guidance. Those cases included *Lindberg* and *Sklodowski*. *Sklodowski* relied upon *Lindberg* and *McNamee*, both cited by the Village as bases for granting summary judgment. Therefore, the circuit court did not grant summary judgment *sua sponte* but, rather, upon the grounds submitted by the Village.

¶ 23    We now turn to the question of whether the Village was statutorily required to provide a particular level of funding pursuant to the Pension Code, as alleged in the Pension Board's complaint. Resolving the question on appeal requires our consideration of sections 3-125 and 3-127 of the Pension Code. We are guided by the familiar principles of statutory construction.

¶ 24    The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. The best method for determining legislative intent is the statutory language, which must be given its plain and ordinary meaning. *Id*. A court may not depart from the plain language by reading exceptions, limitations, or conditions into the statute that conflict with the clearly expressed legislative intent. *Id*. The language of the statute must be read in context and should be given a reasonable construction without being rendered superfluous. See *Prazen v. Shoop*, 2013 IL 115035, ¶ 21. In ascertaining the legislature's intent, a court may also consider the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved. *Id*. Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Kunkel v. Walton*, 179 Ill. 2d 519, 533-34 (1997). However, where the meaning of a statute is unclear from the language, the court may look to other sources such as legislative history to determine the legislature's intent. *Id*. A statute is ambiguous when it is capable of being understood by reasonably well-informed individuals in two or more different manners. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 16.

¶ 25    Section 3-125, at the relevant time, provided that the Village "shall annually levy a tax upon all the taxable property of the municipality" to produce a "sum sufficient to meet the annual requirements of the police pension fund." 40 ILCS 5/3-125 (West 2008). The "annual requirements" included: "(1) the normal cost of the pension fund for the year involved, plus (2) the amount necessary to amortize the fund's unfunded accrued liabilities as provided in Section 3-127." 40 ILCS 5/3-125 (West 2008). Pursuant to section 3-127, the purpose of the "reserve" is to insure the payment of pension obligations. See 40 ILCS 5/3-127 (West 2010). The Pension Board must maintain a reserve to amoritize the fund's unfunded accrued liabilities. See 40 ILCS 5/3-127 (West 2010); *Board of Trustees of the Police Pension Fund v. City of Evanston*, 281 Ill. App. 3d 1047, 1050 (1996). Based on the plain language of the statutes, the Village was required to levy taxes sufficient to cover the cost of the pension fund of the given year, as well as the amortized amount to cover the fund's unfunded accrued liabilities. Section 3-127, however, advised that, in the event the pension fund has a reserve of

less than the accrued liabilities of the fund, the Pension Board must calculate the amount necessary to attain full funding over the course of 40 years from July 1, 1993, for those funds in existence at the time or 40 years from the creation of funds thereafter. 40 ILCS 5/3-127 (West 2010).

¶ 26    The question before us is whether the plain language of the Pension Code created a contractual obligation under which the Village was required to remit funds to the Pension Fund in concert with that reported as necessary by the Pension Board. As stated, the Village moved for summary judgment on the bases that, pursuant to *McNamee*, there was no right to a particular level of funding, and the Pension Board did not provide evidence demonstrating any beneficiaries were denied benefits due to the alleged underfunding.

¶ 27    We first review *McNamee*. In *McNamee*, participants in police pension funds brought an action for declaratory and injunctive relief claiming an amendment to section 3-127 of the Pension Code violated the participants' constitutional pension rights by making the funds less secure. *McNamee*, 173 Ill. 2d at 434. The amendment at issue changed the method of computing the annual amount necessary to amortize the unfunded accrued liability of police pension funds. *Id*. at 435-36. Specifically, the amendment changed the beginning date of the 40-year amoritization period from 1980 to 1993 and changed the method of computing the annual amount required to amortize the unfunded accrued liability from a level dollar amount to a percentage of payroll. *Id*. at 436.

¶ 28    In holding that section 5 of article XIII of the Illinois Constitution (the pension protection clause) (Ill. Const. 1970, art. XIII, § 5) created a contractual right to receive benefits from a pension fund but *did not control funding*, the supreme court relied on the history of the provision and the evils it was intended to address by considering the debates from the constitutional convention. *McNamee*, 173 Ill. 2d at 439-44. Additionally, the supreme court cited *Lindberg*, wherein the supreme court also relied on the constitutional convention debates to conclude that the Pension Protection Clause did not require any particular level of funding. *Id*. at 444. Rather, in *Lindberg*, the supreme court stated that the pension protection clause "does not create a contractual basis for participants to expect a particular level of funding, but only a contractual right 'that they would receive the money due them at the time of their retirement.' " *Id.* (quoting *Lindberg*, 60 Ill. 2d at 271). Ultimately, where the participants did not contend the amendment to section 3-127 diminished their right to *receive pension benefits* or that the new funding method placed the fund on the verge of "default or imminent bankruptcy," the supreme court concluded there was no violation of the pension protection clause. (Internal quotation marks omitted.) *McNamee*, 173 Ill. 2d at 446-47.

¶ 29    The Pension Board argues that *McNamee* is distinguishable because the supreme court only considered section 3-127 of the Pension Code and not section 3-125. The Pension Board is correct that section 3-125 was not at issue in *McNamee*; however, the portion of section 3-125 at issue here, namely, the funding directives for accrued liabilities, is defined by section 3-127. Consequently, the supreme court's analysis of the rights provided by the language of section 3-127 is relevant to the case before us.

¶ 30    We further consider *Sklodowski*, wherein the supreme court addressed pension funding and whether participants in various state employee retirement systems had a contractual right to a particular level of funding. In *Sklodowski*, the statute relevant to that case was Public Act 86-273 (eff. Aug. 23, 1989), which, similar to section 3-127, described a method of amortizing the unfunded retirement system liability over the course of 40 years as a level percentage of

payroll. *Sklodowski*, 182 Ill. 2d at 223. Based on *McNamee* and *Lindberg*, the supreme court concluded that the pension protection clause extended protection to *pension benefits only*. *Id.* at 231. Consequently, the supreme court similarly held that the beneficiaries did not have an enforceable contractual right to control funding *vis à vis* the pension protection clause. *Id.*

¶ 31 The supreme court, however, recognized that *McNamee* established that a beneficiary need not wait to bring a claim under the pension protection clause until benefits were actually diminished. *Id.* at 232. Rather, if a beneficiary could demonstrate that a pension fund was on the "verge of default or imminent bankruptcy," a group action could be taken because such evidence would show that pension benefits were impaired. (Internal quotation marks omitted.) *Id.* However, in *Sklodowski*, where the beneficiaries there only alleged an opinion that the funding levels at the time were insufficient to meet future funding obligations, the allegation was insufficient to demonstrate an impairment of benefits. *Id.*

¶ 32 Finally, in *Sklodowski*, the supreme court dismissed the beneficiaries' argument that, even if the pension protection clause was not intended to control pension funding, the legislature intended to create vested contractual rights by establishing specific contribution levels. In doing so, the supreme court relied on the presumption that "laws do not create private contractual or vested rights, but merely declare a policy to be pursued until the legislature ordains otherwise." *Id.* at 231. The beneficiaries failed to overcome that presumption. *Id.* at 232. Moreover, the supreme court stated that "[t]he funding provisions contained in the Pension Code give no indication of a legislative intention to establish a contractual right." *Id.*

¶ 33 In concluding that the beneficiaries had neither a contractual nor a constitutional right to enforce the level of pension fund contributions mandated by the statute at issue, the supreme court stated:

> "The framers of the Illinois Constitution were careful to craft in the pension protection clause an amendment that would create a contractual right to benefits, while not freezing the politically sensitive area of pension financing. In addition, the funding provisions contained in the Pension Code do not evince a legislative intent to create vested contractual rights in favor of beneficiaries." *Id.* at 233.

¶ 34 Our analysis is further guided by cases wherein this court has considered whether it is within the city council's discretion to determine the taxes to be levied in satisfaction of sections 3-125 and 3-127. In *City of Evanston*, the city council levied a tax for the police pension fund that was less than the amount certified by the pension board as necessary to fund the pension fund. *City of Evanston*, 281 Ill. App. 3d at 1050. This court held that "a city council need not accept the dollar amount recommended to it by a police pension board, but that it must follow Illinois law in calculating the amount it selects as an alternative." *Id.* at 1049. In so finding, this court concluded that sections 3-125 and 3-127 of the Pension Code do not contain language indicating that the city council would be bound by the pension board's conclusion as to the amount required to fund the pension fund. *Id.* at 1052; see also *Village of Spring Grove v. County of McHenry*, 309 Ill. App. 3d 1010, 1015 (2000).

¶ 35 In *Board of Trustees of the Police Pension Fund v. City of Rockford*, 96 Ill. App. 3d 102 (1981), the police and firemen's pension boards petitioned for a writ of *mandamus* compelling the city council to levy taxes in conformity with their interpretations of sections 3-125 and 3-127 of the Pension Code and the similar sections applicable to firemen. The city council refused to levy taxes for the full sum necessary to meet the obligations of the pension funds and their reserve requirements as reported by the pension board, which, as with the case at bar, was

based on the actuarial computations of the Illinois Department of Insurance. In analyzing the language of the statute, this court stated:

> "While sections 3-125 and 3-127 *** of the Act are couched in mandatory language in that the word 'shall' is used, we find no specific reference to the actuarial findings of the Illinois Department of Insurance indicating that its calculations are binding on the city council. Since the tax levy requested by the pension boards is derived from the actuarial findings of the Illinois Department of Insurance, the question at issue is whether the city council has any discretion to depart from these findings in enacting the tax levy for the police and firemen's pension funds." *City of Rockford*, 96 Ill. App. 3d at 106-07.

¶ 36    While recognizing the case was factually distinguishable, the *City of Rockford* court considered language found in *Lindberg*, wherein the supreme court held that compulsory participants in pension plans did not have a contractual right to funding. *Id.* at 107-08. Ultimately, this court affirmed the dismissal of the petition for the writ of *mandamus*, holding that:

> "While the finance and reserve sections of the Illinois Pension Code (sections 3-125 and 3-127 for police pensions and 4-118 and 4-120 for firemen's pensions) are clearly designed to insure the financial integrity of these pension funds, we do not believe it was their purpose to remove all discretion from the city council in determining the dollar amount to be levied for these funds in any particular year and to require the city council to accept the Police Board and the Firemen's Board reports as mandatory in that regard." *Id.* at 108.

¶ 37    Overall, sections 3-125 and 3-127 of the Pension Code have been interpreted as not mandating that taxes be levied in strict concert with the funding recommended by a city council. Moreover, the supreme court has consistently held that a beneficiary is entitled to receive his pension benefits, but that the reserve portion of the "annual requirement" is not a fixed entitlement. We, therefore, find the *McNamee*, *Lindberg*, and *Sklodowski* interpretations of sections 3-125 and 3-127 are relevant to the Pension Code and not just the pension protection clause.

¶ 38    Turning to the case before us, the Pension Board has not satisfied its burden of citing specific language in the Pension Code that demonstrates a legislative intent to establish a contractual right to funding. See *Sklodowski*, 182 Ill. 2d at 231-32 (citing *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 104 (1990)). "A party who asserts that a State law creates contractual rights has the burden of overcoming the presumption that a contract does not arise out of a legislative enactment." *Fumarolo*, 142 Ill. 2d at 104. In fact, the Pension Board has not presented any argument to support its allegation that the Pension Code created a contractual right to funding. Review of sections 3-125, 3-127, and 22-403 of the Pension Code, which restricts the use of pension funds to public purposes and not corporate purposes, demonstrates the legislature's intent to insure that beneficiaries "receive the money due them at the time of their retirement." *Lindberg*, 60 Ill. 2d at 271. There is no language in the relevant statutes using the term "contract" in relation to funding or establishing anything more than statutory rights. See *Fumarolo*, 142 Ill. 2d at 104-05. A court may not depart from the plain statutory language by reading exceptions, limitations, or conditions into the statute that conflict with the clearly expressed legislative intent. *Hamer*, 2013 IL 114234, ¶ 18. Consequently, we conclude that the Pension Code does not create a contractual right to funding.

¶ 39    Our conclusion is supported by the legislature's recent enactment of Public Act 98-599, known as the Reform Act to the Pension Code, which, as of July 1, 2014, provides the pension boards of four of the State's pension systems with the express right to file suit if the State does not maintain the funding levels called for by the Reform Act. See Pub. Act 98-599 (eff. July 1, 2014) (adding 40 ILCS 5/2-125(c), 14-132(c), 15-156(b), 16-158.2(a)). The legislature's action demonstrates that, contrary to the Pension Board's argument, the Pension Code does not provide an implied right to enforce funding levels. See *People v. Ellis*, 199 Ill. 2d 28, 39 (2002) ("[i]f possible, the court must give effect to every word, clause, and sentence; it must not read a statute so as to render any part inoperative, superfluous, or insignificant; and it must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express").

¶ 40    We do recognize that the *McNamee* court established that a cause of action need not wait until benefits are actually diminished; however, the Pension Board did not provide evidence, nor even allege, the Pension Fund was on the "verge of default or imminent bankruptcy." (Internal quotation marks omitted.) *McNamee*, 173 Ill. 2d at 446-47; *Sklodowski*, 182 Ill. 2d at 232. Rather, the Pension Board has failed to establish that *any* beneficiary has been denied benefits. Consequently, the right to benefits has not been impaired.

¶ 41    In sum, where this court has found the statutes provide the Village with discretion in implementing the funding recommendations certified by the Pension Board, where the Pension Board failed to satisfy its burden of providing statutory language to establish a contractual right to specified funding, and where there is no evidence that the fund is currently at risk of denying benefits, the Village was entitled to summary judgment as a matter of law.

¶ 42    As a final note, it bears repeating that, because we have concluded that the circuit court properly considered whether the Pension Board was entitled to the pension funding alleged in its complaint or whether the Village was entitled to summary judgment on the bases submitted, it was unnecessary for this court to consider the additional arguments regarding standing. Simply stated, the statutes do not provide a cause of action for underfunding so long as there is no allegation or proof the fund at issue is on the verge of default or imminent bankruptcy.

¶ 43                    II. Partial Summary Judgment Regarding Liability

¶ 44    The Pension Board also appeals the circuit court's denial of its motion for partial summary judgment as to liability. The Pension Board contends that sections 3-125 and 3-127 provide the basis for filing suit and requests an order requiring the Village to levy taxes to fully fund the Pension Fund where it is undisputed that the Village underfunded the Pension Fund. In addition, the Pension Board argues that the Village is liable for the Pension Fund's portion of the property taxes levied and collected.

¶ 45    As previously determined, the Pension Code does not provide a contractual right to funding. Consequently, the circuit court did not err in denying the Pension Board's partial motion for summary judgment where there was no basis for a finding of liability for underfunding.

¶ 46    Turning to the issue of the money collected by the Village as a result of taxes that were levied, yet not remitted to the Pension Fund, we find the Village was liable pursuant to relevant sections of the Pension Code. In response to an interrogatory, the Village admitted that "[b]ecause of accounting practices, there was oversight by the Village of Riverdale in paying

- 12 -

the Police Pension Fund its portion of property taxes received" and instead the money was deposited into the "Village pooled account and was used for general operations."

¶ 47    The language of section 3-125, in relevant part, provided that "[t]he police pension fund shall consist of the following moneys which shall be set apart by the treasurer of the municipality: (1) All moneys derived from the taxes levied hereunder" and "[t]he tax shall be forwarded directly to the treasurer of the board within 30 business days after receipt by the county." 40 ILCS 5/3-125 (West 2008). Moreover, section 3-132 of the Pension Code adds that the Pension Board has the power and duty to control and manage the Pension Fund, instructing that "[a]ll money received or collected shall be credited by the treasurer of the municipality to the account of the pension fund and held by the treasurer of the municipality subject to the order and control of the board." 40 ILCS 5/3-132 (West 2010). Finally, section 22-403 provides:

> "Any tax heretofore or hereafter levied for the benefit or purposes of any such pension fund by the tax-levying body authorized by the law creating such fund to levy such tax, and any payment or contribution to such fund made by the State, or by any county, city, town, municipal corporation or body politic and corporate located in the State, is hereby declared to be so levied or so contributed for governmental purposes under such law, and not for the corporate purposes of such tax-levying body, or of the State, or of any county, city, town, municipal corporation or body politic and corporate of the State, irrespective of the nature or character of the duties performed or services rendered by any employee member of any such pension fund." 40 ILCS 5/22-403 (West 2010).

¶ 48    Based on the language of these statutes, we conclude that, to the extent the Village exercised its authority in levying taxes for the benefit of the Pension Fund, the money collected by the Village must be forwarded to the treasurer of the Pension Board. Accordingly, although there is no contractual right to specified funding, a Pension Board is entitled to its portion of the monies actually received as a result of the taxes that were levied under the statute.

¶ 49    As stated, in the Village's response to the Pension Board's interrogatory, the Village admitted that money was owed to the Pension Fund. The Village further admitted that the amount was "to be determined in deposition of Maggie Britton and any possible actuarial expert deposition for the [Village] in addition to Ms. Britton's testimony." The record contains an excerpt of Britton's deposition testimony; however, that excerpt does not establish the amount of tax money collected yet not remitted to the Pension Fund by the Village. Accordingly, we reverse, in part, the circuit court's February 17, 2012, order denying the Pension Board's motion for partial summary judgment as to the Village's liability for the money collected on behalf of the Pension Fund. We remand for a determination of the amount of collected tax money that is owed to the Pension Fund.

¶ 50    We note that the Illinois Public Pension Fund Association has expanded the Pension Board's argument beyond that raised in its appellate brief or in its memorandum of support for its motion for partial summary judgment. As a "friend" of the court, the sole function of an *amicus* is to advise or make suggestions to the court within the purview of the issues framed by the parties. *In re J.W.*, 204 Ill. 2d 50, 73 (2003). We, therefore, need not consider whether the Village treasurer breached his fiduciary duty to the Pension Board or whether the Village engaged in fraud.

¶ 51                              CONCLUSION

¶ 52        We affirm the judgment of the circuit court granting summary judgment in favor of the Village on the issue of funding the Pension Fund. We also affirm, in part, the judgment of the circuit court denying partial summary judgment against the Pension Board where there is no basis for a finding of liability for underfunding. We, however, reverse, in part, the judgment of the circuit court denying partial summary judgment against the Pension Board regarding the tax money levied and collected on the Pension Fund's behalf. We remand for a determination of the appropriate amount owed to the Pension Fund.

¶ 53        Affirmed in part and reversed in part; cause remanded for additional proceedings.